## MOTOROLA, Inc. v. NATIONAL LABOR RELATIONS BOARD.

No. 12996.

United States Court of Appeals
Ninth Circuit.

Sept. 30, 1952.

Writ of Certiorari Denied Jan. 5, 1953.
See 73 S.Ct. 336.

Jennings, Strouss, Salmon & Trask, Irving A. Jennings, Richard G. Kleindienst, Phoenix, Ariz., for petitioner.

George J. Bott, General Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. General Counsel, Elizabeth Weston, Marshall J. Seidman and Charles Hacker, Attorneys, N.L.R.B., Washington, D. C., for respondent.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This matter is before us on petition of Motorola to review and set aside an order of the National Labor Relations Board and on the cross prayer of the Board for enforcement.

The order proceeds on findings that Motorola violated § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1, 5), by refusing to recognize a local of the International Association of Machinists as the bargaining agent of its machine-shop employees[1]; by giving the machine-shop men a precipitate raise in pay calculated to cool their ardor for collective bargaining; and by failing to bargain in reference to subsequent pay increases awarded the employees in the appropriate unit. The Board, in making its findings, adopted without material change those of the Trial Examiner.

1. The Board, properly, we think, concluded as a matter of law that these employees constitute a unit appropriate for the purposes of collective bargaining within the intendment of the Act.

Motorola contends that the findings are not supported by substantial evidence on the record considered as a whole. We may say at once that we are not able to agree. The basic question is one of credibility, and in this area much must be conceded the superior opportunity of the Examiner to observe the demeanor of the witnesses.

When the case arose, in July of 1950, Motorola had in its employ 24 workers in the machine shops of its Phoenix plant. During the first week of July nineteen of these employees signed cards designating the Machinists Union as their bargaining representative. On the 10th of the month Jones, the business agent of the Union, approached Noble, the director of the Phoenix plant, identified himself as the representative of a majority of the machine-shop employees, and requested that the Union be recognized as the bargaining agent of that group. In reply Noble stated, among other things, that he had no experience in dealing with unions, and that the request would have to be referred to the Company's personnel department in Chicago, headed by a Mr. Piper. He told Jones that an answer would be given in ten days. Within a matter of hours after this conversation Noble telephoned Piper, reported his interview with Jones, requested advise as to what to do about the Union's demand, and stated that Piper's presence in Phoenix was required "right away" for the purpose of reviewing wage rates.

The next day Piper flew out from Chicago under instructions to investigate the facts relating to the request for recognition and "to determine what unit was involved." Upon arriving in Phoenix he conducted over a period of several days a series of interviews with the employees in the plant, delivered a lecture to them explaining the advantages of Motorola's pension and group insurance plans and stated that wage increases were in process. On the 14th he completed work on a schedule of wage increases for the machinists and others, the increases being put into effect immediately, retroactive to June 19 in the case of the machine-shop group.

On the morning of the 14th Union agent Jones telephoned Noble and inquired whether Piper had brought word from Chicago as to the Union's pending demand for recognition, to which Noble replied that Piper was "not out here for that." Jones protested the action of the Company in reference to the forthcoming wage increases, of which he had heard, on the ground that it was unethical under the circumstances to grant wage raises to the machinists without consulting the Union. Noble replied that it would be unethical to withhold the announced pay raises. On the same day Piper flew back to Chicago without communicating with Jones, although informed that the latter wished to speak to him. He did ask Mr. Jennings, Motorola's Phoenix counsel, to schedule a conference with Jones on the 19th or 20th, at which time Piper expected to make another trip to Phoenix. Jones, however, was away for a few days and did not receive Jennings' message until the 22nd, at which time he called upon Jennings at his office. Jennings, according to his own testimony, understood that Jones was speaking as the representative of the machinists or the machine-shop group. He told Jones that the Company would not recognize the Union unless it obtained a Board certification, advising him further not to fool with the Motorola plant. He refused Jones' suggestion of the holding of a consent election to determine the Union's majority. Some days later the Union filed its charges.

At the Board hearing the Company undertook to justify its refusal to recognize the Union on the ground that its responsible spokesmen doubted the validity of the Union's claim to have representative status as regards the machine-shop employees. But, as the Board observed, if the Company doubted the majority of the Union on July 10, Noble failed to say so; and if there was any confusion in the minds of its officials as to the scope of the unit in which the Union sought recognition, no questions were directed to Jones or to anyone else to determine what employees the claimed unit would embrace. The plea of good faith was rejected, and the Company was held to have violated § 8(a)(5) of the Act by its refusal to bargain. The Board further found that the Company had under-

taken, instead, to alienate the Union's following by means of the precipitate wage increases described above, thereby violating § 8(a)(1).

Motorola argues that there was nothing precipitate in its conduct in respect of raising wages. The Examiner agreed that changes in wage rates had in fact been under consideration for some time prior to the demand for recognition, and he was of the belief that even if the Union had not appeared on the scene it was probable that within a reasonably short period some increases would have been granted. But he thought that both the timing and the liberality of the increases were motivated by the Union's appearance. In reaching this conclusion he placed considerable reliance on the testimony of two machine-shop employees, Neslund and Hornyak, concerning the reaction they got when they talked to Rafter, the machine-shop foreman, about the subject of raises. When, about July 10, Neslund asked Rafter for a raise the foreman told him he would try to get him a raise of 15 cents an hour; and, similarly, Hornyak testified that about July 1 Rafter said that perhaps he could get him a 5 cent raise; and upon Hornyak's replying that such a raise might not be enough to induce him to stay, Rafter finally suggested 10 cents. But when the raises were made a few days after the recognition demand, Neslund's rate was increased 35 cents an hour and Hornyak's by the same amount.[2]

It appeared, also, that the machine-shop employees fared substantially better than the other workers at the plant. By virtue of increases and reclassifications wages in the machine-shop unit were increased in some instances by as much as 60 cents an hour. The Board regarded these very substantial increases, coming as they did so quickly after the demand for recognition and seemingly favoring the employees in the machine-shop unit, as persuasive evidence that they were in fact granted for the purpose of discouraging membership in the Union and persuading the machinists that they would be better off without representation.

If this were the whole showing it could not be doubted that the Board's findings were amply warranted. But the Company contends that the precise wage increases granted the machine-shop group had been proposed and formulated by its plant superintendent Smead as early as June 24, that is to say more than two weeks before the demand for recognition, hence the Board's reliance on the fact and amounts of the increases was wholly misplaced. It is here that we reach the chief problem of credibility posed by the record.

Introduced as an exhibit is a penciled sheet of paper, apparently in Smead's handwriting, bearing the notation "6-24-50," designating the 24 machine-shop employees by name for the exact increases awarded them by Piper on July 14. But the date, at least, on this paper is rationally open to suspicion, and the Examiner disbelieved Smead's testimony that the document, with its notations unchanged, was actually in existence at the time indicated. Accordingly he declined to accept the document as satisfactory proof that the July 14 wage increases in the amounts later approved by Piper were planned by the local officials before the advent of the Union.

We think the Examiner's attitude was not unjustified. The Smead memorandum was not definitely identified by any witness except Smead as respects dates and figures although it is clear he did have a memo which he showed to Noble about July 6 and to Piper later on. Piper testified that on his arrival on July 12th he looked at one or two documents on proposed increases prepared by local officials. "However," he said, "they [the local officials] did not have the benefit of the thinking on the type of wage structure we had planned for this plant, and they were, therefore, not in a position to plan or to construct a wage structure for the entire organization." He remarked, further, that they were not particularly qualified in wage studies.

Another thing that legitimately troubled the Examiner was the undisputed testi-

---

2. Rafter was not called to testify during the course of the hearing.

mony of Hornyak and Neslund. During the period of late June foreman Rafter collaborated with Smead and the other local officials in considering recommendations to be made for wage adjustments. If large increases were in fact in process of being formulated for proposal by Smead it is strange that Rafter would be unaware of it, or that he should have suggested to Hornyak on July 1 and to Neslund on July 10 that they could expect no more than 10 cents or 15 cents in the way of raises.

The petition to set aside the Board's order is denied and a decree will be entered enforcing the order as prayed.