## NATIONAL LABOR RELATIONS BOARD v. ANDERSON et al.

No. 13628.

United States Court of Appeals
Ninth Circuit.

Sept. 2, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Arnold Ordman, Milton Eisenberg, Attys., N. L. R. B., Washington, D. C., for petitioner.

Hill, Farrar & Burrill, Carl M. Gould, Wirin, Rissman & Okrand, Ray Johnson, Los Angeles, Cal., for respondent.

Before HEALY and BONE, Circuit Judges, and LEMMON, District Judge.

HEALY, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order predicated on findings that the respondents violated § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), by unlawfully interfering with the organizational rights of their employees.

During the latter part of 1950 and extending through the first half of 1951 a labor organization affiliated with the CIO, hereafter referred to as the Union, undertook to organize respondents' employees. Representation proceedings were instituted by the Board in the course of which two elections were held, the first on February 20, 1951, and the second in June of that year. The February election was set aside by the Board because of what it found to be misconduct on respondents' part.[1]

Various incidents of unlawful interference, such as interrogation of employees, threats of closure of the plant, promises of benefits, and the like are detailed in the findings. In general, the argument of the respondents is that the findings are not supported by a "preponderance" of the evidence; and that the expressions correctly attributed to them or their representatives were mere statements of opinion protected by the free speech provision of the Act.[2] On consideration of the record as a whole we are satisfied that the findings are substantially supported. Respondents' quarrel with the trial examiner and the Board relates mainly to questions of credibility, which the courts do not normally undertake to resolve. Cf. Motorola v. N. L. R. B., 9 Cir., 199 F.2d 82; N. L. R. B. v. State Center Warehouse, 9 Cir., 193 F.2d 156. And while it is arguable that some of respon-

1. In connection with a still earlier election, held under Board auspices in 1944, respondents had been found guilty of unlawful interference.

2. 29 U.S.C.A. § 158(c).

ents' statements are protected, others—incontrovertibly established—are clearly not.

Examples of the latter sort will now be given. The night before the February election each employee received a printed booklet and notice of a proposed higher schedule of wage rates, bearing his name, and reading in part as follows:

"This wage scale and the rules set out in this booklet is not a promise it is an offer to you.

"If the Company wins the election, the wage scale in the back of the book will go into effect February 26, 1951. Your classification will be (Classification), your hourly rate will be $ (rate), including shift differential, and, with this wage scale you will still have your bonus system.

"This offer is made to you in order to protect you against a wage freeze.

"Protect yourself, vote no against the C.I.O.

"If you fail to vote it will be a vote for the Union and a vote against an increase in wages now."

In the election the Union was defeated, and the wage increase was thereupon put into effect. Respondents do not deny that the wage freeze mentioned had become effective about a month before this literature was circularized. They tell us, however, that the statement was made in good faith inasmuch as they had delivered the material to the printer prior to the wage freeze. Assuming good faith as of the time of preparing the literature, the absence of that ingredient as of the time of distribution is notable.

Eleven days before the second election, ordered by the Board to be held in June, the employees were again circularized. This time the literature stated in part that "the Union-dominated National Labor Relations Board has ordered another election. The former election was set aside because the Company raised your wages in order to keep them from being frozen * * *. If the Union wins the next election, LeBaron [the Board's regional director] will make another capricious ruling which will order your wages set back to where they were

before the Company raised them * * *." No comment as to the bad faith and coercive effect of these utterances is necessary.

Decree will be entered enforcing the order as prayed.