**UNITED STATES of America,
Appellee,**

v.

**Ignazio MARCHESE a/k/a Benny Marchese, and Salvatore Cuomo, Defendants-Appellants.**

**Nos. 666, 667, Dockets 35837, 35838.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1971.

Decided Jan. 27, 1971.

Richard J. Davis, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and Allan A. Tuttle, Asst. U. S. Atty., of counsel), for appellee.

Daniel H. Greenberg, New York City, for defendants-appellants.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

PER CURIAM:

Salvatore Cuomo and Ignazio Marchese appeal from their convictions, after trial before Judge Motley and a jury in the District Court for the Southern District of New York, of conspiring to violate and of violating the portion of 18 U.S.C. § 2314 that makes criminal the transportation in foreign commerce of securities of $5,000 or more in value known to have been stolen, converted or taken by fraud. Marchese received concurrent sentences of five years on the conspiracy and ten on the substantive count; Cuomo received consecutive sentences of five years on the conspiracy and three on the substantive count.

The Government's principal witness was Irwin Ploss, a certified public accountant. In October 1969, Cuomo, whom Ploss had known for over a year,

asked whether Ploss knew of any procedures for protecting the "anonymity" of the owner in the negotiation or pledge of two or three million dollars of Treasury bills. Ploss told him "there were places where that was a perfectly normal and legitimate thing and that could be done probably in Europe." During the first week of November, Cuomo turned up at Ploss' apartment with a photocopy of a $1,000,000 Treasury bill and asked if Ploss would be interested in negotiating it in a manner that would protect the desired anonymity. Ploss responded he would first have to take it to a bank to verify that it was not on a list of lost or stolen securities and not counterfeit. On November 10 Cuomo returned, learned that the result of the inquiry had been favorable, and asked whether Ploss "was ready to go to Europe, whatever was necessary, to go to convert the note, negotiate it or use it as collateral." Ploss was quite ready—for a fee of half the difference between $500,000 and the net proceeds after expenses. About a week later, Cuomo delivered the Treasury bill, which in fact had been stolen from the Morgan Guaranty Trust Company prior to October 21, to Ploss who mailed it to a post-office box in Zurich, Switzerland, and flew there that same night. After the bill's arrival, Ploss took it to Luxembourg where he attempted, without success, to negotiate it at a bank. After returning to Zurich, he was arrested by the Swiss police while boarding a return transatlantic flight with the Treasury bill in his possession and was deported, after a few weeks' detention in the course of which he was relieved of the bill.

Shortly after his return to New York, Ploss received a telephone call from Marchese, to whom he had been introduced in 1968 at the same time he had met Cuomo. Marchese wanted to come to Ploss' apartment, then or later, but Ploss put him off. When Marchese said he "was worried about the money" and Ploss declined to discuss the matter, Marchese said, "Well, then, call Sal." Ploss explained at trial that he understood this to mean Salvatore Cuomo. Although Cuomo was represented at trial by separate counsel, no objection to the remark was made on Cuomo's behalf, nor was there any request for a limiting instruction.[1] On February 6, 1970, Ploss met Marchese in front of the former's apartment building. Marchese said that his life was in danger, that he had been asked to pay $250,000, and that he wanted Ploss to give back the money. Remarking that Marchese must be "crazy," Ploss asked whether his interrogator hadn't heard that he had been arrested and that the note was a stolen one. When Marchese expressed scepticism about the arrest, Ploss produced letters and a telegram he had sent his family from Switzerland. There was evidence about other peculiar dealings and the possible involvement of two

1. In making this comment, we are not to be understood as implying that Cuomo would necessarily have been entitled to favorable action. The argument that he was would be founded on the fact that while the statement could well be regarded as in furtherance of the conspiracy and thus within that hearsay exception, up to this point there had been no sufficient evidence—indeed none except the knowledge displayed in the same conversation —that Marchese had conspired with Cuomo. Admissibility of the statement against Cuomo would thus have had to rest on the view that the remark "Well, then, call Sal," was a "verbal act," admissible as circumstantial rather than testimonial evidence and thus not within the hearsay rule at all. Yet the jury was doubtless expected to take the remark as a declaration by Marchese that he and Cuomo were working together, and this, along with the statement by Marchese discussed below, was essential to the conspiracy conviction, since the conspiracy count was submitted on the basis that the jury, in order to convict, must find an agreement between Marchese and Cuomo, the only persons named as conspirators in the indictment. For a discussion of the problem that can be created by pressing the "circumstantial evidence" principle too hard, see United States v. Bennett, 409 F.2d 888, 895 n. 6 (2 Cir.), cert. denied sub nom., Haywood v. United States and Jessup v. United States, 396 U.S. 852, 90 S.Ct. 113, 117, 24 L.Ed.2d 101 (1969).

rather shadowy figures who were named as co-conspirators in the bill of particulars although not in the indictment, but what we have summarized is enough.

 The principal claim on appeal is insufficiency of the evidence. It is urged with respect to Marchese that the criminal transportation was completed long before the date of the first piece of evidence connecting him with the conspiracy. But the telephone call to and the street conversation with Ploss afforded ample basis for the jury's drawing the inference that Marchese had been in the conspiracy with Cuomo from the beginning—indeed that it was he who had obtained the Treasury bill from the thieves and was being prodded by them for payment. That being so, Pinkerton v. United States, 328 U.S. 640, 646–648, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), allowed the jury to convict him for the substantive offense as well. Cuomo's claim of insufficiency of evidence on the substantive charge borders on the frivolous. So far as concerns the conspiracy count, whatever the case concerning sufficiency of the evidence might have been if objection had been made to the admission, as against Cuomo, of Marchese's telephone remark, see fn. 1, as to which we express no opinion, none was made either at trial or even on appeal, and we are surely not disposed to invoke the "plain error" rule, F.R.Cr.P. 52(b), in this case.

██ Much is sought to be made of the fact that, immediately before counsel began their summations, the judge informed the jury that sometimes lawyers tried to tell the jury what the law was, that this was the function of the court, that the jury was bound to accept the judge's instructions on the law, and that our legal system provides a method of correcting any errors in such instructions that the judge might make. We perceive no error in this statement. Although the jury has "power to bring in a verdict in the teeth of both law and facts," Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185 (1920), it is surely not wrong for the court to urge them not to do so. If a judge thinks he can reduce the chance that the jury will usurp the court's function by telling them of the means available for correction of error in the instructions, that is a permissible choice. We do not find at all persuasive the suggestion that Judge Motley's statement as to the reviewability of her instructions could have led the jurors to take their task of fact determination lightly, particularly in light of her instruction that "[t]he most important part of this case is the part which you now as jurors are about to play because it is for you and you alone to decide whether these defendants are guilty or not guilty."

██ Two further points are mentioned. The first is the judge's having allowed the Government to excise the first two pages of a five page statement given by Ploss to the Swiss authorities on his arrest. While this material would doubtless have added spice to the cross-examination, there is not the slightest chance that it could have affected the result. The second is a claimed inadequacy in the instructions as to mens rea and conspiracy. Since the court made clear to the jury that they could not convict without finding the defendants' actions to have been knowing and wilful and that conspiracy required a finding that there was an agreement between the two defendants to engage in such actions, the instructions were entirely adequate.

Affirmed.