UNITED STATES of America,
Appellee,

v.

Francis Joseph KLEIN, Appellant.

No. 404, Docket 73–1594.

United States Court of Appeals,
Second Circuit.

Argued Nov. 9, 1973.

Decided Dec. 5, 1973.

**482**

Richard J. Egger, Jr., New York City, for appellant.

James E. Cullum, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., Northern District of New York, of counsel), for appellee.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

PER CURIAM:

In the morning of July 24, 1972, two men robbed a branch office of the Marine Midland Bank in Troy, N. Y., of approximately $33,000; one of them threatened bank employees with a gun. An indictment in the District Court for the Northern District of New York charged that the robbers were appellant Klein and one Peter John Galvin. The latter's trial was severed and the jury found Klein guilty of bank robbery in violation of 18 U.S.C. § 2113(a) and of assaulting bank employees in violation of 18 U.S.C. § 2113(d).

An important part of the case against Klein, who was not directly identified by bank employees, was this: Two bank employees testified that at the time of the robbery they saw a green Ford, which one of them identified as being of late 1960's vintage, parked in front of the bank. Later on the day of the robbery law enforcement officers discovered a mile from the bank a green 1969 or 1970 Ford containing a packet of $10 bills in a Federal Reserve wrapper and, in the trunk, brick and mortar fragments and a container of windshield washer solution. Mr. Robert Irish testified that Klein had performed masonry work for him shortly before the robbery, arriving at Irish's home in a green Ford; that Irish had helped Klein unload bricks from the trunk; and that he had noticed a half-gallon jug of window-washer there. He also testified that on July 27 he had identified a green Ford shown to him by the FBI as the one Klein had driven. There was other evidence, including testimony by Klein himself, tending to show that Klein had been driving a green Ford in July or at least in late June; and the abandoned car contained a blue plastic strip with the name of Klein's landlord.

Klein contends that Irish's identification should not have been admitted since there was no proof that the green Ford shown to him on July 27 was the one the law enforcement officers had found on July 24. Trial counsel made only a general objection to this testimony. A general objection, if overruled, cannot avail on appeal unless "on the face of the evidence, in its relation to the rest of the case, there appears *no purpose whatever* for which it could have been admissible. . . ." (emphasis in original). 1 Wigmore, Evidence § 18 at 332–38 (3d ed. 1940); cf. McCormick, Evidence § 52 at 115–16 (Cleary ed. 1972); United States v. Indiviglio, 352 F.2d 276, 279 (2 Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); Proposed Federal Rule of Evidence 103(a). Here the general objection gave the judge no inkling of what is now claimed to have been in the trial counsel's mind. Indeed, three times previously during direct examination of Irish the defense had objected to what it considered leading questions, and the objection now pressed seemed more likely to be intended to extend that line of objections than to raise the new ground of irrelevancy. Had the ground of objection now asserted been timely disclosed, the Government

could readily have supplied testimony to fill the void. Moreover, the presence of the brick and mortar fragments and the fluid both in the car found on July 24 and in that exhibited to Irish on July 27 afforded sufficient evidence of identity.

■ Appellant's other point relates to the use of the grand jury testimony of his sister, Mrs. Virginia Clow. She testified at trial that FBI agents had visited her on July 24, had spoken of a bank robbery and had inquired about her brother's whereabouts. She admitted that Klein came to her home that evening and that she had told him of a visit of FBI agents; but she professed inability to recall whether anything was said about a bank robbery, as distinguished from a proposed visit to a circus, because she had been drinking that day and night. Efforts to refresh Mrs. Clow's recollection in this regard by exhibition to her of the transcript of her grand jury testimony proved a failure but elicited an admission that if something was in the transcript, she had said it. Over objection the prosecutor was then allowed to read the following to the jury:

"Q— And did you in fact ask your brother whether or not he had been involved in a particular bank robbery in Troy, New York on that date?

A— Yes.

Q— And did he offer you any response?

A— He didn't.

Q— He didn't offer you any response?

A— He didn't answer me or I don't remember if he did."

In United States v. Borelli, 336 F.2d 376, 390–391 (2 Cir. 1964), cert. denied, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965), we referred to a principle, long antedating and quite different from our basis of decision in United States v. De Sisto, 329 F.2d 929 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), that when a witness "affirms the truth of a prior statement, the earlier statement is to be considered 'not only as bearing on the credibility of the witness but as affirmative evidence'," quoting from Stewart v. Baltimore & Ohio R.R., 137 F.2d 527, 529 (2 Cir. 1943), and citing cases from other circuits. If Mrs. Clow had said explicitly that her grand jury testimony was the truth, this principle would sustain the judge's ruling. Since she had sworn to tell the grand jury the truth and in no way suggested at trial that she had disregarded that oath, her admission that the transcript correctly reflected what she had said is so close to the hypothetical that a distinction would be irrational.

■■ On the other hand, if she were to be regarded as having disowned her grand jury testimony, De Sisto would support its admission. As pointed out in De Sisto, supra, 329 F.2d at 933, the historic ritual of instructing a jury that prior inconsistent testimony may be used for impeachment but only for that "seems peculiarly absurd when a witness who has given damaging testimony on his first appearance at a trial denies any relevant knowledge on his second"; and, as De Sisto also held, id. at 933–934, the same considerations govern grand jury testimony. It is immaterial whether the reason for the witness' denial of knowledge on the second appearance is fear, as it apparently was in De Sisto, a desire to help the defense, as in United States v. Insana, 423 F.2d 1165, 1167, 1170 (2 Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970), and perhaps here, or an honest lapse of memory in the interval.

■ We add that the grand jury testimony here at issue was almost inconsequential since by asking one question too many, the prosecutor had given Mrs. Clow the opportunity to suggest that Klein might have made some response about the bank robbery but that she had forgotten—a suggestion no less credible and no more damaging to the defendant than her testimony at trial that she could not recall whether the robbery had been discussed at all. Also the petit jury was made well aware

that, due to her drinking problem, Mrs. Clow's recollection of her conversation with Klein on the evening of July 24 may not have been very reliable. The case against Klein was so strong that it is impossible to believe that anything turned on the admission of Mrs. Clow's equivocal testimony before the grand jury.

Affirmed.