**Stanley WATTS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 7777.**

District of Columbia Court of Appeals.

Argued En Banc March 20, 1975.

Decided July 28, 1976.

---

6. *See Moore v. United States, supra* at 18–19; *Johnson v. United States,* D.C.App., 322 A. 2d 590 (1974); *Banks v. United States, supra* at 258.

Richard A. Levie, Washington, D.C., appointed by this court, for appellant.

Carl S. Rauh, Principal Asst. U. S. Atty., Washington, D.C., argued for appellee. Earl J. Silbert, U. S. Atty. and John A. Terry and James F. McMullin, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

A jury found appellant guilty of burglary in the first degree, D.C.Code 1973, § 22–1801(a), and two counts of assault with a dangerous weapon, *id.* § 22–502.

In an opinion issued November 26, 1974, a division of this court, by a vote of 2–1, reversed the convictions and ordered a new trial on the ground that the trial court erred in instructing the jury that if it found that all elements of the charged offenses had been proven beyond a reasonable doubt, it "must find" appellant guilty. 328 A.2d 770. The majority accepted appellant's argument that such an instruction was "equivalent to the trial judge's directing a verdict of guilty, which violates appellant's Sixth Amendment right to trial by jury." *Id.* at 772.

On February 7, 1975, we granted the government's petition for rehearing en banc and vacated the November 26 opinion. Having reconsidered the case en banc, we now hold that no error warranting reversal occurred and affirm appellant's convictions.

The victims of the assault were Cynthia Celey and Bertha Inabinet. Celey had known appellant for about three years, during much of which they experienced an intimate but stormy relationship. Approximately a year prior to the incident involved in this case, Celey went to the Corporation Counsel's office to complain that appellant had beaten her. Celey and appellant terminated their dating relationship several months prior to the events before us. At that time, appellant threatened her, and thenceforth she lived in fear of him.

She testified that she had needed protection from him on several occasions, and that it became necessary to have the windows of her home nailed shut. Several weeks prior to the incident at issue, appellant cut a hole in a window in Celey's home in an effort to gain entrance, but he withdrew when he was noticed by Inabinet.

The offenses in this case occurred early in the morning of December 24, 1972. Celey and Inabinet were asleep in the living room of the house they shared with their respective children. A house guest and the children were sleeping upstairs. Inabinet was sleeping in a chair, fatefully having covered herself with Celey's coat.

At approximately 6:00 a. m., Celey was awakened by a loud crash. She looked up and recognized appellant standing over Inabinet. In his hands were the remains of a china cat which had been hanging on the wall. Appellant had smashed the cat on Inabinet's head, apparently under the impression that he was assaulting his ex-girl-friend. Celey screamed at appellant, calling him by name. Appellant then began an assault on her, first using the shattered remains of the china cat and then striking her with an ashtray. Appellant then fled.[1]

■ In charging the jurors as to one count of the indictment, the trial judge instructed that if they found that the government had proven the existence of each element of the offense beyond a reasonable doubt, "then you must find the defendant guilty as charged. If you do not find the facts to be [*sic*] you must acquit the defendant."[2] Appellant contends that this was equivalent to directing a guilty verdict, depriving him of his Sixth Amendment right to a trial by jury. However, defense counsel did not object to the instruction at trial, and the argument on this question is pressed for the first time on appeal. Thus, unless the action now complained of constitutes plain error, the absence of timely objection effectively insulates the disputed language from appellate interference.[3]

■ The obvious reason for requiring that objections to instructions be made before the jury retires is to afford the trial court an opportunity to correct any instructional defect and thereby avoid error which otherwise might necessitate a new trial. See e. g., *Villaroman v. United States,* 87 U.S.App.D.C. 240, 241–42, 184 F.2d 261, 262–63 (1950); *United States v. Indiviglio,* 352 F.2d 276, 280 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15

1. Appellant's defense was alibi. He also presented two witnesses who testified to Celey's poor reputation in the community for truth and veracity. On rebuttal, the government offered testimony which contradicted appellant's alibi defense and disputed the negative character evidence regarding Celey.

2. In another variation of the same theme, the court also gave the following instruction: "If after deliberation you find the Government has proved its case to your satisfaction beyond a reasonable doubt, then you must find the defendant guilty of this charge."

3. Super.Ct.Cr.R. 30 (which is identical to Fed.R.Crim.P. 30) deals with jury instructions. Among its provisions is the following: No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

See *United States v. Williams,* 172 U.S.App. D.C. 290, 521 F.2d 950 (1975).

In addition, Super.Ct.Cr.R. 52(b) (also identical to the corresponding federal rule) provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Fed.R.Crim.P. 54 specifically makes Rule 52 (b) applicable to proceedings in the United States Courts of Appeals, but the Superior Court rules contain no such provision. Nonetheless, where there is plain error concerning instructions, such an error is subject to review in our discretion. *Bunter v. United States,* D.C.App., 245 A.2d 839, 842 (1968); see *Adams v. United States,* D.C.App., 302 A.2d 232 (1973); *Harris v. United States,* 112 U.S.App.D.C. 100, 299 F.2d 931 (1962); D. C.Code 1973, § 11–721(e).

L.Ed.2d 663 (1966). In order to discourage the intentional withholding of objections by defense counsel, errors not objected to at trial are unreachable on review unless they fall within the purview of the plain error rule. Under that standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. *See Adams v. United States,* D.C.App., 302 A.2d 232 (1973); *Bunter v. United States,* D.C.App., 245 A.2d 839 (1968). Evaluating this case in such a light, we conclude that the challenged instructions did not reach the level of plain error.

 Certainly it is impermissible for a trial judge to direct a verdict of guilty. However, it cannot validly be said that the trial court did so in this case. It is axiomatic that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L. Ed.2d 368 (1973). Among the carefully delivered instructions were those explaining the presumption of innocence and the government's duty to prove each element of each offense beyond a reasonable doubt. After the judge enumerated the individual elements of each offense, he instructed the jury as to the meaning of reasonable doubt. When he had completed this process for all three of the charged offenses, he gave a detailed explanation of the necessity for the jury to keep each offense separate during its deliberations. He charged the jury on the government's need

to establish the defendant's presence at the time and place of the offense in the face of appellant's alibi defense. Subsequent instructions reminded the jurors that although the verdict was their "sole and exclusive duty and responsibility", it was their duty to accept the law as the court stated it and to determine the facts fairly and without prejudice. The instructions explicitly and fully explained that the jury was free to exercise its own judgment as to the credibility of witnesses and to reject that testimony which it felt was unreliable or implausible. Finally, the court charged the jury that it must consider the instructions "as a whole" without giving special attention to any particular one. Unlike the cases relied upon by appellant, the instructions here neither told the jury that it must find the defendant guilty if it rejected his alibi defense, *see United States v. Hayward,* 136 U.S.App.D.C. 300, 420 F.2d 142 (1969), nor that it must return a guilty verdict if it simply "believed" that the defendant had committed the offense. *See Billeci v. United States,* 87 U.S.App.D.C. 274, 184 F.2d 394 (1950). *See also Baker v. United States,* D.C.App., 324 A.2d 194 (1974).

In each of those cases, the defective instructions explicitly or impliedly sanctioned that which the law does not allow, namely, guilty verdicts returned on proof of less than every element necessary to constitute the offense, and evaluation of the government's case under a standard more lenient than that of proof beyond a reasonable doubt.[4] *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**4.** In *Billeci v. United States, supra,* the United States Court of Appeals sanctioned an instruction that a jury "should" find a defendant guilty if it believed beyond a reasonable doubt that he committed the offense. The true significance of the approved instruction can be gathered only from the context of the error the court's holding was intended to correct. In *Billeci,* the trial judge, in his efforts to encourage a deadlocked jury to reach a verdict, stated:

You must confine yourselves strictly to the question and ask yourself honestly, "Do I believe from the evidence I have heard at

this trial that the defendants have committed this crime?" If you answer the question "Yes," you must find the defendants guilty. If your answer is "No," then you must find them not guilty. [87 U.S.App. D.C. at 279, 184 F.2d at 399, quoting the trial judge.]

Holding those directions to the jury to be erroneous, the court of appeals concluded: That statement is not the law. The law is that if the jury believed beyond a reasonable doubt that the defendant has committed the alleged offense it should find a verdict of guilty, but if there be a reason-

In contrast, the trial court's instructions in this case correctly advised the jury as to both its prerogative as the exclusive fact-finder and its solemn obligation to render the verdicts which the law and the facts compelled. *Cf. Arshack v. United States,* D.C.App., 321 A.2d 845 (1974). There could have been no uncertainty in the jurors' minds that unless they were convinced of appellant's guilt beyond a reasonable doubt, no verdict but that of not guilty could be returned. The trial judge's instructions conveyed the concept of proof beyond a reasonable doubt numerous times. The jury repeatedly was reminded that it had the sole power to determine the verdicts, and was told that it should disregard any intimated or expressed opinion of the trial judge. The jury was fully and properly guided with respect to both its obligations and its prerogatives.

■ We recognize that the law permits a jury to acquit in disregard of the evidence, and that such an acquittal is unreviewable. *See Horning v. District of Col-umbia,* 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920). Conceding this power of a jury, we do not feel its exercise should be encouraged.[5] The present standardized jury instruction on burden of proof provides that the jury "must find" a defendant not guilty if the government fails to prove every element of an offense beyond a reasonable doubt, but gives the jury no guidance at all as to its duty if it finds that each element of the offense has been proven beyond a reasonable doubt.[6] The jury's option to reject both the evidence and the law is effectively communicated to it through various formal and informal channels.[7] Careful consideration of the totality of the problem has led us to conclude that a meaningful degree of instructional equipoise is needed to guide jurors in arriving at their verdicts. To be silent as to a juror's duty if guilt is proven beyond a reasonable doubt is to invite acquittals based not on the law and the facts, but on whim, sympathy, or prejudice. A verdict returned on such a basis scarcely is consistent with the profound obligation under-

able doubt in the minds of the jurors they must acquit. [*Id.*]

The phrase of crucial importance which was omitted from the trial court's instructions in *Billeci* is "beyond a reasonable doubt". *See In re Winship, supra,* 397 U.S. at 363, 90 S.Ct. 1068. The reversal in *Billeci* did not hinge upon the subtle distinction between the words "should" and "must".

5. The exercise of the jury's prerogative-in-fact to acquit out of conscience or prejudice is a tolerated "anomaly in the rule of law." *United States v. Simpson,* 460 F.2d 515, 519 n. 12 (9th Cir. 1972). Of course, juries can and have disregarded both uncontroverted evidence and the court's instructions on matters of law. Nonetheless, it cannot be suggested that because a jury in fact may reject the instructions of the judge, it is erroneous to charge that its duty is to accept the law as the court states it. [Our jurors now are instructed in part: "It is your duty to accept the law as the court states it to you." Criminal Jury Instructions for the District of Columbia, No. 2.01 (D.C.Bar Ass'n, 2d ed. 1972).] "Jury nullification" ultimately represents a jury's defiance of the law, and an acquittal resulting from such defiance inevitably is the exercise of a power

that the jury has been informed, in some way, that it does not possess. We stated in *Arshack v. United States, supra,* at 851:

No doubt juries sometimes act out of compassion and in disregard of the law. But we will not place upon such conduct by juries the stamp of judicial approval through an instruction from the court. To do so would actually encourage anarchy in the courtroom, and that might in the end harmfully infect organized society.

*See also United States v. Dougherty,* 154 U.S. App.D.C. 76, 96–97, 473 F.2d 1113, 1136–37 (1972); *Fuller v. United States,* 132 U.S. App.D.C. 264, 297, 407 F.2d 1199, 1232 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

6. *See* Criminal Jury Instructions for the District of Columbia, No. 2.08 (D.C.Bar Ass'n, 2d ed. 1972). Language such as that before us here, instructing as to a jury's obligation to find guilt where it has been proven beyond a reasonable doubt, has been added to the text of the Bar Association's standardized instruction on an ad hoc basis by various trial judges.

7. *See United States v. Dougherty, supra* note 5, 154 U.S.App.D.C. at 98, 473 F.2d at 1135.

taken by each juror.[8] We find no error—much less plain error—in the trial court's use of "must find" in lieu of the term "should find" (as was sanctioned in *Billeci v. United States, supra*) in its instructions to the jury.

We are not alone in reaching such a conclusion. It is apparent from cases decided in other jurisdictions that numerous courts are concluding that sound principles of criminal jurisprudence require a balanced exposition of both sides of a juror's basic duty. In such cases, where the jury properly has been instructed on the standard of proof beyond a reasonable doubt, appellate courts consistently have upheld the use of instructions which, in effect have advised the members of a jury that they have as great an obligation to convict where guilt has been proven as they do to acquit where it has not. *See, e. g., United States v. Johnson,* 462 F.2d 423, 429 (3d Cir. 1972), *cert. denied,* 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973); *United States v. Minker,* 312 F.2d 632, 636 (3d Cir. 1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963); *Straughter v. State,* 247 A.2d 202, 203–04 (Del.

1968); *State v. Devoe,* 301 A.2d 541, 545–46 (Me.1973); *State v. Bryant,* 375 S.W. 2d 107, 108–09 (Mo.1964).

■■■ While we conclude that no error occurred in the instructions as given, in the exercise of our supervisory authority over the Superior Court we deem it appropriate to sanction the prospective use of a variant of the existing standardized instruction. *See Winters v. United States,* D.C.App., 317 A.2d 530 (1974) (en banc). Accordingly, we endorse the following modification of the latter portion of Criminal Jury Instruction No. 2.08: "If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty."[9] In our view, such a charge would best serve the interests of justice.[10]

■■■ Appellant urges several other grounds for reversal. We find no merit in any of those arguments.[11] The govern-

---

**8.** At the start of every jury trial in the Superior Court, each juror solemnly swears that he or she will "a true verdict render according to the law and the evidence". That oath must be considered to have deep meaning. It tells the jurors of the proper considerations which must guide them: (1) evaluation of the facts as they are presented without caprice or bias, and (2) application of the appropriate principles of law as enunciated by the court.

**9.** We note that our views in this case are wholly consistent with those expressed in our en banc opinion in *Winters v. United States, supra.* There, in setting forth a modified version of a charge to be used when a jury reflects undue difficulty in reaching a verdict, we adopted the following language as a part of such a charge: " . . . it is your duty to decide the case if you can conscientiously do so." 317 A.2d at 534. Far from directing a guilty verdict, as our dissenting colleagues contend, what we sanction here is a balanced charge, advising of a duty to convict where guilt is proven beyond a reasonable doubt, or to acquit where it is not.

**10.** In *United States v. Johnson, supra,* at 429, the Third Circuit sustained the use of the following specific instruction in the context of the instructions as a whole:

"It is also your sworn duty to find him guilty if the Government has carried its burden of proof and has established his guilt beyond a reasonable doubt. This is necessarily so and vitally important, because the failure on the part of courts and juries to enforce one law leads to the violation of other laws, thus undermining the morals, the peace and order of the nature and the general safety of the lives and property of the people."

**11.** Appellant cites as error several of the trial court's evidentiary rulings and the failure to give certain limiting instructions. One of his contentions merits brief discussion. The government called Bertha Inabinet, the victim of appellant's initial assault, as a witness. In response to a question asked on cross-examination, Inabinet stated that after she regained consciousness following the blow to her head, she asked Cynthia Celey why she had hit her. She further stated that she had

ment's evidence against appellant was overwhelmingly persuasive, and there is no basis for reversing the convictions based thereon.

*Affirmed.*

MACK, J., took no part in the consideration or decision of the case.

FICKLING, Associate Judge, with whom KELLY, Associate Judge, joins, dissenting:

The majority holds today that the trial judge properly instructed the jury that it *must* return a guilty verdict if it found beyond a reasonable doubt that the appellant committed acts which constituted the essential elements of the crime charged.[1] I must respectfully disagree. In my view, this peremptory command, equivalent to a directed verdict, seriously invaded the province and prerogatives of the jury, thereby undermining appellant's constitutional right to a jury trial.

thought that it was Celey who had struck her. The prosecutor claimed surprise, and the court permitted him to impeach Inabinet with a prior inconsistent statement in which she had told the grand jury that she thought, based on what Celey had told her, that appellant had been her assailant. Defense counsel requested no cautionary instruction on the purpose for which the grand jury statement was admitted. Appellant now claims that it was plain error for the trial court to have failed, sua sponte, to so instruct.

This argument has superficial appeal in light of this court's decision in *Lofty v. United States*, D.C.App., 277 A.2d 99 (1971). However, *Lofty* was limited by *Dixon v. United States*, D.C.App., 287 A.2d 89, 98–99, cert. denied, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed. 2d 813 (1972). *See Johnson v. United States*, D.C.App., 356 A.2d 639, 642 (1976) (Yeagley, J., dissenting) ; *Jackson v. United States*, D.C.App., 354 A.2d 869, 874 (1976). Additionally, two factors distinguish the instant case from *Lofty*. Upon redirect examination by the prosecutor, Inabinet acknowledged the truth of the statement she had made to the grand jury. In so doing, she adopted the prior statement and it became part of her in-court testimony, subject to cross-examination. As the United States Court of Appeals for the Second Circuit noted in *United States v. Borelli*, 336 F.2d 376, 391 (2d Cir. 1964), cert. denied, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) :

> When a witness thus affirms the truth of a prior statement, the earlier statement is to be considered "not only as bearing on the credibility of the witness but as affirmative evidence." [T]he trier of the facts has "two conflicting statements * * * of equal force as evidence". [Citations omitted.]

*See also United States v. Tavares*, 512 F.2d 872 (9th Cir. 1975) ; *United States v. Klein*, 488 F.2d 481 (2d Cir. 1973), cert. denied, 419 U.S. 1091, 95 S.Ct. 683, 42 L.Ed.2d 684

(1974) ; *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), cert. denied, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974) ; *United States v. Carter*, 417 F.2d 229 (3d Cir. 1969), cert. denied, 397 U.S. 999, 90 S.Ct. 1145, 25 L.Ed.2d 409 (1970) ; *Harman v. United States*, 199 F.2d 34 (4th Cir. 1952).

In addition, even if we were to choose not to follow the reasoning of *Borelli*, we see no prejudice flowing to appellant from the lack of the cautionary instruction. Neither Inabinet's testimony on the stand nor her prior statement to the grand jury could have had any probative value on the issue of the identity of her assailant. Inabinet had testified that the blow she received rendered her unconscious, and she did not revive until later, when she was surrounded by police and neighbors. Her prior statement was based on information supplied to her by others, and we assume the jury attributed to it the negligible weight which it deserved.

1. The trial judge used the word "must" on three separate occasions in his instructions to the jury.

Instruction No. 2 charged the jury that "if you find beyond a reasonable doubt that on December the 24th, 1972, in the District of Columbia, the defendant, Stanley Watts, did enter the sleeping dwelling of Cynthia D. Celey, [that] said dwelling was occupied at the time, and that at the time of the entry the defendant possessed the specific intent to commit an assault upon Cynthia D. Celey, then you *must* find the defendant guilty of burglary in the first degree." (Emphasis added.)

Instructions 5 and 6, which dealt with the charge of assault with a dangerous weapon against both Celey and Inabinet, also charged the jury that if it found, beyond a reasonable doubt, the facts to be as charged, then it "*must* find the defendant guilty." (Emphasis added.)

The Sixth Amendment provides that a criminal defendant shall have the right to a trial by an impartial jury. A fundamental principle implicit in this guarantee is that a trial court may never instruct a jury to convict. *United Brotherhood of Carpenters v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973 (1947); *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185 (1920); *Sparf v. United States,* 156 U.S. 51, 105, 106, 15 S.Ct. 273, 39 L.Ed. 343 (1895). A judge cannot direct a verdict of guilty through the use of the words "must" or "required," even in the face of undisputed and uncontradicted facts, *United States v. Gollin,* 166 F.2d 123, 127 (3d Cir.), *cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); *Dinger v. United States,* 28 F.2d 548, 550 (8th Cir. 1928), and even though the evidence points conclusively towards guilt. *Edwards v. United States,* 286 F.2d 681, 683 (5th Cir. 1960); *Loomis v. United States,* 61 F.2d 653, 655 (9th Cir. 1932); *Cain v. United States,* 19 F.2d 472, 475 (8th Cir. 1927). Moreover, a judge cannot partially direct a guilty verdict. *Mims v. United States,* 375 F.2d 135, 148 (5th Cir. 1967).

In the instant case, I can only conclude that the trial judge directed the verdict through his use of the word "must." No particular incantation by a judge is necessary to conclude that a verdict has been directed. As Judge Tamm stated in *United States v. Hayward,* 136 U.S.App.D.C. 300, 302, 420 F.2d 142, 144 (1969):

> While the judge in this case did not direct a verdict of guilty in form, that is the substantive effect of the instruction given. The rule against directed verdicts of guilt includes perforce situations

in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true. . . .

It is clear that the use of the peremptory word "must" has a mandatory and coercive effect on a jury. The word itself constitutes a command which eliminates all options and discretion. I have no doubt that a reasonable juror would conclude that the court is *directing* a verdict of not guilty, when the trial judge tells that jury that it *must acquit* the defendant if the government has not proved its case beyond a reasonable doubt. Accordingly, there is no reason to believe that the same reasonable juror would not conclude that the court is also *directing* a verdict of guilty, by its use of the same word *"must,"* if the government proves its case beyond a reasonable doubt. Moreover, the compelling, coercive effect of the command is heightened by the fact that it is voiced by a judge. "[T]he influence of the trial judge on the jury is necessarily and properly of great weight. and . . . his lightest word or intimation is received with deference, and may prove controlling." *Starr v. United States,* 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894). Stated another way, "[a] judge's charge is reverentially received by the average jury, be it delivered extemporaneously or carefully scripted." *United States v. Driscoll,* 454 F.2d 792, 795 (5th Cir. 1972). Accordingly, the use of this strong command in the context of jury instructions concerning an accused's guilt has met with disapproval. *Billeci v. United States,* 87 U.S.App.D.C. 274, 184 F.2d 394 (1950);[2] *accord, United States v.*

---

2. In *Billeci, supra* at 279, 184 F.2d at 399, the trial judge gave the following instructions in an attempt to secure a unanimous verdict from a deadlocked jury:

If you believe from the testimony that the defendants have committed the crime of which they are charged, then you *must* find a verdict of guilty, irrespective of whether the witnesses appealed to you or not. On

the other hand, if you do not believe that the defendants have committed the crime of which they are charged, then you must find a verdict of not guilty.

You must confine yourselves strictly to the question and ask yourself honestly, "Do I believe from the evidence I have heard at this trial that the defendants have committed this crime?" If you answer the

*Cunningham,* 423 F.2d 1269, 1277 (4th Cir. 1970); *Cain v. United States, supra* at 475.[3]

The trial judge's highly objectionable peremptory instructions invaded the province of the jury in two separate but related ways. In so commanding the jury, the trial judge usurped two fundamental jury prerogatives, thereby upsetting the delicate balance [4] existing between the independent functions of the judge and jury.

### I.

First, it is fundamental that in a criminal jury trial, it is the *exclusive* function of the jury to decide all questions of fact and the ultimate question of guilt or innocence. *Cooper v. United States,* 94 U.S. App.D.C. 343, 345, 218 F.2d 39, 41 (1954); *accord, United States v. Rowan,* 518 F.2d 685, 693–94 (6th Cir.), *cert. denied,* 423 U. S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975). The classical practice is that the judge delivers the applicable law of the case, defining and explaining the offense charged against the defendant, and the jury, thus being informed as to the exact law, places its determination of the facts alongside the law and reports in open court in a single verdict of "guilty" or "not guilty." When fulfilling this vital function of rendering a verdict, "[t]he jury must not be reduced to

the position of a mere ministerial agent by a direction on their very thought." *Morris v. United States,* 156 F.2d 525, 529 (9th Cir. 1946). In *Morris,* the court went on to state:

> "The jury is in no sense the agent of the judge. They both derive their origin from the same high source, and the judge in laying down rules to guide the jury in their deliberations, merely acts as the mouthpiece of the law for the purpose of marking out a definite and clearly ascertained path by which the ends of justice are attained." . . . [T]he *composite decision of law and fact* is thus rendered by the jury after they have been duly instructed. Their verdict is but a reflection of such action. [*Id.* at 531; citations omitted; emphasis in original.]

In the instant case, the trial judge usurped this traditional function of the jury by instructing that a guilty verdict *must* be rendered if certain facts were found beyond a reasonable doubt. By virtue of this peremptory command, the jury was relegated to the role of the judge's agent. Likewise, the rendering of a guilty verdict became merely a ministerial act upon the finding of certain facts.

The courts have severely criticized this sort of direct control by the judge over the

---

> question "Yes," you *must* find the defendants guilty. If your answer is "No," then you must find them not guilty. . . . [Emphasis added.]

In holding that these instructions were erroneous, Judge Prettyman stated:

> That statement is not the law. The law is that if the jury believes beyond a reasonable doubt that the defendant has committed the alleged offense it *should* find a verdict of guilty, but if there be a reasonable doubt in the minds of the jurors they must acquit. . . . [Emphasis added.]

Contrary to the majority's view, the *Billeci* court focused equally on the two erroneous aspects of the instruction: *viz.,* the omission of the "reasonable doubt" standard *and* the use of the word "must." The majority chooses to disregard the erroneous use of "must," finding that there is only a subtle distinction between the words "should" and

"must." I must disagree with such a selective reading of the case. Moreover, I find the distinction between "should" and "must" obvious and vitally important.

3. Contrary to the majority's view, the giving of an instruction that amounts to a directed verdict is "plain error." *United States v. Musgrave,* 444 F.2d 755, 762 (5th Cir. 1971); *United States v. Ragsdale,* 438 F.2d 21, 27 (5th Cir. 1971); *Mims v. United States, supra* at 148.

4. The majority speaks of the need for a "meaningful degree of instructional equipoise" to guide juries in arriving at their verdicts. In my view, however, this approach destroys the delicate balance (or equipoise, if you will) which has traditionally existed between the separate functions of the judge and jury.

jury verdict in the closely analogous situation of special verdicts. In federal criminal practice, submission of a form calling for a special verdict or special interrogatories from the jury has been held to be error. *See, e. g., United States v. Mc-Cracken*, 488 F.2d 406, 419 (5th Cir. 1974); *United States v. Adcock*, 447 F.2d 1337, 1339 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971); *United States v. James*, 432 F.2d 303, 307 (5th Cir. 1970), *cert. denied*, 403 U.S. 906, 91 S.Ct. 2214, 29 L.Ed.2d 682 (1971); *United States v. Spock*, 416 F.2d 165, 180–85 (1st Cir. 1969); *Gray v. United States*, 174 F.2d 919, 923–24 (8th Cir.), *cert. denied*, 338 U.S. 848, 70 S.Ct. 90, 94 L.Ed. 519 (1949). In 2 Wright, Federal Practice and Procedure: Criminal, ch. 7, § 512 at 364, it is said:

> In the Civil Rules provision is made for the use of special verdicts or of a general verdict accompanied by special interrogatories. There is no such provision in the Criminal Rules, and the submission of a form calling for a special verdict by a jury in a criminal case has been held to be error. "In such trials the practice has been settled time out of mind to charge but one crime in one count, to accept but one general plea to it and to call upon the jury to make but one general response, guilty or not guilty." Special verdicts might be acceptable if the only duty of the jury were to find the facts, leaving it to the court to apply the law. In criminal cases, however, it has always been the function of the jury to apply the law, as given by the court in its charge, to the facts. . . . [Footnotes and citations omitted.]

In setting forth the reasons for his dislike of special verdicts, then-Chief Judge Aldrich stated in *United States v. Spock, supra* at 181–82:

> In the exercise of its functions not only must the jury be free from direct control in its verdict, but it must be free from judicial pressure, both contemporaneous and subsequent. . . . Both have been said to result from the submission of special questions. . . .

> \* \* \* \* \* \*

> We are less concerned by the jury's possible fear of subsequent criticism with respect to special findings than we are with the subtle, and perhaps open, direct effect that answering special questions may have upon the jury's ultimate conclusion. There is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step. A juror, wishing to acquit, may be formally catechized. By a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted. The result may be accomplished by a majority of the jury, but the course has been initiated by the judge, and directed by him through the frame of the questions. [Citations omitted.]

Moreover, in *United States v. Noble*, 155 F.2d 315, 317–18 (3d Cir. 1946), the court stated:

> If the jury's only duty was by a special verdict to answer interrogatories as to the existence of certain facts and to leave to the judge the application of the law to the facts thus found it might have been sufficient merely to give them a copy of the information for their guidance in performing this duty. But the jury in the present case had a much greater duty than this. *They were called upon to determine by a general verdict not only whether the defendant did certain acts which he was alleged to have done but also whether the doing of those acts amounted to the commission of the crime against the United States with which he was charged. In making that determination it was necessary for them to apply the law to the facts as they found them to be.* . . . [Emphasis added.]

The link between special verdicts and the type of instruction given in the instant case is clear. In both cases, the jury is called on to find facts, but the application of these facts to the law is reserved for the judge. The trial judge's peremptory command to return a guilty verdict, if certain facts were found beyond a reasonable doubt, operated like a special verdict, thereby constituting an impermissible level of direct control over the jury verdict. Like a special verdict, the mandatory instruction to convict poses the additional dangers of excessive judicial pressure and jury catechizing.

The majority attempts to dispel any notion of jury coercion by arguing that the peremptory instructions cannot be viewed in isolation. Rather, the majority states that *all* the instructions must be analyzed in their totality. Specifically, the majority notes that "[t]he jury repeatedly was reminded that it had the sole power to determine the verdicts, and was told that it should disregard any intimated or expressed opinion of the trial judge." The majority also points out that the jury received instructions regarding the presumption of innocence and the government's duty to prove each element of each offense beyond a reasonable doubt.

My response is twofold. First, I agree that a single instruction to a jury may not be judged in artificial isolation. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). However, in utilizing this contextual approach, a conviction cannot stand if one part of the charge overwhelms the fairness and efficacy of the entire charge. *United States v. Driscoll, supra* at 796. In the instant case, the overwhelmingly coercive effect of the peremptory instructions was not neutralized by the remaining instructions. Second, the irreconcilable inconsistency between the two key instructions is fatal. On the one hand, the jury is told that it *must* find appellant guilty if certain facts are found beyond a reasonable doubt. On the other hand, the jury was informed that the verdict was its "sole and exclusive duty and responsibility." Certainly such a patent contradiction leads only to confusion in the jury's deliberations.

II.

Aside from usurping the jury's exclusive power to render its own verdict after applying the law to the facts, the trial judge's peremptory instructions invaded another separate but related prerogative of the jury—that of jury nullification. Jury nullification is that unreviewable power of the jury to bring in a verdict of not guilty "in the teeth of both law and facts." *Horning v. District of Columbia, supra,* 254 U.S. at 138, 41 S.Ct. at 54. This jury prerogative is embodied in the jury's power to issue a general verdict of not guilty which is irreversible by the court and which does not reveal the jury's rationale. *United States v. Dougherty,* 154 U.S.App. D.C. 76, 93, 473 F.2d 1113, 1130 (1972).

In the instant case, the trial judge's peremptory command to return a guilty verdict if certain facts were found beyond a reasonable doubt, effectively foreclosed the exercise of the jury nullification prerogative. In effect, the trial judge affirmatively and authoritatively told the jury that such a power did not exist. As such, this was an erroneous statement of the law.

At the outset, it is important to recognize that the trial judge was not simply neutral on the question of nullification. By his emphatic command, the trial judge effectively negated the possibility in the jury's mind. In its attempt to sugarcoat an otherwise unpalatable pill, the majority glibly concedes the existence of the jury nullification power, but states that "we do not feel its exercise should be encouraged." The trial judge, of course, took a quantum leap beyond merely withholding encouragement. Rather, he affirmatively foreclosed any possibility of the exercise of the power in the minds of the jury.

I agree with the cases in this jurisdiction and across the country which have held that it is not error to refuse to instruct the jury that it, in fact, possesses such a power. *Arshack v. United States,* D.C.App., 321 A.2d 845, 849–52 (1974); *accord, United States v. Wiley,* 503 F.2d 106–07 (8th Cir. 1974); *United States v. Dougherty, supra,* 154 U.S.App.D.C. at 93–100, 473 F. 2d at 1130–37; *United States v. Dellinger,* 472 F.2d 340, 408 (7th Cir. 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed. 2d 706 (1973); *United States v. Simpson,* 460 F.2d 515, 518–19 (9th Cir. 1972); *United States v. Boardman,* 419 F.2d 110, 116 (1st Cir. 1969), *cert. denied,* 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970); *United States v. Moylan,* 417 F.2d 1002, 1005–07 (4th Cir. 1969), *cert. denied,* 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970). A jury should exercise this power only on rare occasions, and, accordingly, I agree that the jury is sufficiently apprised of its option through the various formal and informal channels which have existed up to now. *See United States v. Dougherty, supra,* 154 U.S.App.D.C. at 98, 473 F.2d at 1135. Moreover, I agree that although the jury has the power to bring in a verdict "in the teeth of both law and facts," it is surely not impermissible for the court to *urge* or *encourage* the jury not to do so provided the court does not coerce or command a guilty verdict. *See United States v. Marchese,* 438 F.2d 452, 455 (2d Cir. 1971).

The majority holds today, however, that the trial judge can affirmatively inform the jury that no such power exists, that is, that it *must* return a guilty verdict if it finds certain facts beyond a reasonable doubt. I view such a holding as dangerous and unwarranted. It impinges on the very essence of the jury's role as one of the spokesmen for the community conscience in determining whether blame can be imposed. *See Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 155–56, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

For all of the foregoing reasons, I strongly dissent from the majority's sanction of the instruction given in the case at bar. The use of the peremptory phrase "must find guilty" is equivalent to a directed verdict and seriously invades fundamental powers and prerogatives of the jury. Although this instruction may well increase the conviction rate in our trial courts, it can only do so at the expense of the constitutional right to a jury trial.

I would note finally that although the majority finds no error in the "must convict" instruction given below,[5] it proceeds to endorse the following modification of Criminal Jury Instruction No. 2.08.

> If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

Without addressing the merits of this particular modification, I would note only that I see no need to change the existing instruction. New procedures and innovations in criminal procedures should be adopted only with great hesitation. *See United States v. Spock, supra* at 183. This is especially true where the innovation may well impinge on fundamental rights of the accused.

---

5. Since the majority finds that it was not error, much less plain error, to give this peremptory instruction, I assume that trial courts in the future may continue to use the "must convict" language.