Christopher **DICKERSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 89–CF–210.

District of Columbia Court of Appeals.

Argued Dec. 8, 1992.
Decided Feb. 19, 1993.

David C. Gray, appointed by this court, was on the brief, for appellant.

Peggy Kuo, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Roy W. McLeese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

A jury found appellant, Christopher Dickerson, guilty of one count of armed robbery under D.C.Code §§ 22–2901, –3202 (1989 Repl.), but was unable to reach a unanimous verdict on the charges of burglary in the second degree, D.C.Code §§ 22–1801(b), –3202 (1989 Repl.), felony murder while armed in connection with the burglary, D.C.Code §§ 22–2401, –3202 (1989 Repl.), and felony murder while armed in connection with the armed robbery, D.C.Code §§ 22–2401, –3202.[1] After a retrial, a second jury found appellant guilty of armed robbery and felony murder in connection with the robbery, but acquitted him of the remaining charges.[2] The count of armed robbery was resubmitted to the second jury for the sole purpose of clarifying the charge of felony murder, with the agreement of all parties that the second verdict was to have no effect on the original conviction for armed robbery and the trial court would defer imposing sentence on the original conviction, thus foreclosing its use for impeachment at the second trial. The judge sentenced Dickerson on both the armed robbery and the felony murder convictions.

Dickerson's principal contention on appeal is that the trial court committed plain error when it substituted the word "duty" for the word "must" in the standard jury instruction regarding acquittal in the event the jury had a reasonable doubt as to whether Dickerson had committed every element of the offense in question. We find appellant's contention of plain error unpersuasive and, accordingly, affirm.

I.

In the early morning hours of January 29, 1986, a drug dealer named Wilfredo LaRosa was stabbed to death and robbed of an unspecified amount of currency and narcotics. At trial, the government presented the testimony of Sean Butler, who was in the decedent's employ as a drug runner. Butler, who was familiar with all four codefendants, testified that on January 28, 1986, at approximately 9:00 or 10:00 p.m., he observed Dickerson and his codefendants go into an apartment building on First Street near Galveston Street, S.W., with LaRosa. Inside the building were several empty apartments, including Apartment No. 202, which were apparently utilized by LaRosa as a "clubhouse" where he waited while his "employees" trafficked in narcotics outside on his behalf.

One of these employees was Donald "Butch" Stewart, who testified that he was a friend of both appellant Dickerson and codefendant Evans, and was with LaRosa in Apartment No. 202 at 10:00 p.m. on the night of the murder. He testified that he gave LaRosa five or six hundred dollars in exchange for cocaine which Stewart was to sell on the street. Codefendant Evans, who was also present, confided to Stewart that he intended to kill LaRosa. Stewart, not taking Evans seriously, never told LaRosa about Evans' remark.

Due to an apparent lack of customers that evening, Stewart retired to a friend's house for two hours. Upon his return to the Galveston Street area, he encountered Anderson and his three codefendants, who appeared out of breath as if from running. They all went to Evans' apartment where

1. Appellant's codefendant at this trial was Montiquie "Pete" Evans, who was found guilty on all four counts.

2. Appellant's codefendants in the second trial, John Anderson and Carlton Chatmon, were acquitted of all charges.

Stewart noticed that Anderson had in his possession approximately four to five hundred dollars, and appellant Dickerson had a bag containing what he believed to be cocaine. Stewart testified that he recognized the bag as the one LaRosa had used to dispense cocaine to him several hours earlier. To ensure Stewart's silence, Anderson gave him some of the cocaine.

LaJuan Baylor, Dickerson's girlfriend, testified that the night before she learned of LaRosa's death, Dickerson had approached her at approximately 1:00 a.m. and asked her to hide some cocaine. He also informed her that there had been a murder in which he was involved. She testified that after she had given her statement to the police, Dickerson requested her to change it, but she refused.

## II.

Standard Jury Instruction 2.08 provides, in relevant part:

> If you find that the government has proved beyond a reasonable doubt every element of the offense with which the defendant is charged, [you may] [it is your duty to] find him guilty. On the other hand, if you find the government has failed to prove any element of the offense beyond a reasonable doubt, you *must* find the defendant not guilty.

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 208 (D.C. Bar Ass'n, 2d ed. 1972) (emphasis supplied).

At the second trial, the trial court instructed, in the part Dickerson challenges, "if on the other hand, you find that the government has failed to prove any element of any charge as to a particular defendant, then as to that defendant in that charge *it's your duty* to acquit, to render a verdict of not guilty as to that defendant and that charge."

Appellant argues that this change was prejudicial in that the phrase "it's your duty," while implying a moral obligation to act accordingly, does not rise to the level of the absolute mandate which is imposed by the phrase "must find." Despite appellant's opportunities to raise any objection in a timely manner, he failed to do so, and

can prevail here only by demonstrating plain error, that is, by demonstrating prejudice to appellant's substantial rights so egregious that " 'a miscarriage of justice would otherwise result.' " *Harris v. United States*, 602 A.2d 154, 159 (D.C.1962) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592, n.14, 71 L.Ed.2d 816 (1982)). *See* D.C.Code § 11–721(e) (1989 Repl.); *Towles v. United States*, 428 A.2d 836, 843 (D.C.1981). Under this exacting standard, any error in the use of the disputed language is effectively insulated from appellate reversal unless Dickerson can persuade us that the "error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

At the threshold, we observe that appellant has demonstrated no significant difference in meaning between the terms "duty" and "must," nor any source which suggests that one implies a stronger sense of obligation than the other. *See* BLACK'S LAW DICTIONARY 505 (6th ed. 1990) (*duty*: "a human action which is exactly conformable to the laws which require us to obey them. Legal or moral obligation. An obligation that one has by law or contract;" *must*: "like the word 'shall,' is primarily of mandatory effect, ... but ... is often used in a merely directory sense," *id.* at 1019); FERDICO'S CRIMINAL LAW AND JUSTICE DICTIONARY 154 (1992) (*duty*: "An obligation to do something;" *must*: "To be required or obligated," *id.* at 287); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 609 (2d ed. 1987) (*duty*: "something that one is expected or required to do by moral or legal obligation ... the binding or obligatory force of something that is morally or legally right; moral or legal obligation;" *must*: "to be obliged or bound to by an imperative requirement ... to be under the necessity to; ... to be required or compelled to, as by the use or threat of force," *id.* at 1269); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 390 (1985) (*duty*: "a moral or legal obligation ... obligatory tasks, conduct, service, or functions that arise from one's

position (as in life or in a group;" *must:* "to be obliged to ... be required by law, custom, or moral conscience," *id.* at 782).

Appellant's reliance on *Watts, supra,* as a basis for such a distinction is misplaced. In *Watts,* the trial judge instructed the jury in conformity with the "Red Book" of criminal jury instructions then in use [3] that it "must acquit the defendant" if the government had not carried its burden of proof, but then went beyond the Red Book formula by instructing the jurors that if they found that the government successfully proved every element of the offenses (burglary and assault with a deadly weapon) beyond a reasonable doubt, "then you must find the defendant guilty as charged." *Id.* at 708. Upon affirming the conviction, we exercised our supervisory authority over the Superior Court and modified the latter portion of Criminal Jury Instruction 2.08 to its current form:

> If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty. *Id.* at 711.[4]

An indication that we viewed the words "duty" and "must" as interchangeable is the fact that we explained that "what we sanction here is a balanced charge, advising of *a duty* to convict where guilt is proven beyond a reasonable doubt, or to acquit where it is not." *Id.* at 711 n. 9. We observe that in the instant case, the trial judge balanced the instruction by using the word "duty" with respect to both acquittal and conviction.

In affirming the conviction in *Watts,* we also noted that "[i]t is axiomatic that 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Id.* at 709 (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973)).[5]

Here, in the course of almost thirty pages of transcribed jury instructions, the trial judge methodically explained, *inter alia,* the presumption of innocence and the necessity that the government prove each element of each count for each defendant beyond a reasonable doubt before a verdict of guilty could be returned on that count. The court then painstakingly explained the definition of reasonable doubt and the elements of each offense, and stressed the importance of giving "separate consideration to each defendant and to each charge." These instructions were preceded by the overarching caution that the jury "should consider [the] instructions as a whole and not give any undue weight to any particular one instruction to the exclusion of any other."

We reject appellant's contention that when read in complete context, "[t]he effect of the trial court's instruction was to reduce the standard of obligation to acquit in the required circumstance to something demonstrably short of a clear mandate." Accordingly, we find unpersuasive appellant's contention that the trial court's substitution of the words "it's your duty" for "must," was plain error. Appellant also urges several other grounds for reversal.[6]

---

**3.** CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, *supra.*

**4.** We note that this instructional language was approved in *United States v. Pierre,* 974 F.2d 1355 (D.C.Cir.1992).

**5.** *See Murchison v. United States,* 486 A.2d 77, 82 (D.C.1984) ("In reviewing jury instructions, we must look at the instructions 'as a whole in assessing whether they constituted prejudicial error.'" (citation omitted)); *Powell v. United States,* 485 A.2d 596, 601 (D.C.1984) ("In evaluating the propriety of a court's instructions, the reviewing court must look upon the charge as a whole 'without selecting and comparing separate phrases for literal content.'" (citation omitted), *cert. denied,* 474 U.S. 981, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985)); *Charles v. United States,* 371 A.2d 404, 408 (D.C.1977) ("[P]ropriety of the trial court's instructions is to be determined from the whole of the charge, rather than through the scrutiny of isolated sentences or passages.")

**6.** Appellant argues that the trial court in the first trial committed reversible error in refusing to grant a mistrial where the prosecutor impeached appellant with previous convictions immediately following his general denial of the charges. This argument is unpersuasive be-

Finding no merit in any of those arguments, we affirm, but we remand the case to the trial court to vacate appellant's conviction of armed robbery.

So ordered.

cause the predicate for the felony murder conviction was the armed robbery "conviction" in the second trial. The second jury did not hear appellant's testimony during the first trial and, therefore, no issue under *Dorman v. United States*, 491 A.2d 455 (D.C.1984) arose, and we need not determine whether the impeachment was impermissible. Appellant's further arguments that the armed robbery conviction merged with the felony murder conviction, and that the trial court mistakenly sentenced appellant for the armed robbery charge as presented in the second trial despite the parties' stipulation that it was to have no effect, are academic in light of the government's concession that the armed robbery and murder charges merge.