Anthony HOLLIS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 91–CF–421, 92–CO–479.

District of Columbia Court of Appeals.

Argued April 14, 1993.

Decided May 4, 1993.

---

Gerald I. Fisher, Washington, DC, for appellant.

Halsey B. Frank, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and James R. Costello, Jr., Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellant contests the denial without a hearing of his motion under D.C.Code § 23–110 (1989) alleging ineffective assistance of his trial counsel. We conclude that affidavits supporting the motion signed by a codefendant who claimed readiness to exculpate appellant at trial—affidavits given to defense counsel before trial—raised issues of fact that require a hearing on appellant's ineffective assistance claim. We therefore reverse the denial of the motion and remand for a hearing.

## I.

Appellant and codefendant Anthony Straite were jointly charged with one count of distribution of cocaine (D.C.Code § 33–541(a)(1) (1988)). Straite pleaded guilty to the charged count on October 23, 1990. Appellant proceeded to trial before a jury on February 13, 1991, and was found guilty as charged. The government's evidence revealed that appellant and Straite had been standing together in a block of Shepard Street, N.W., on October 11, 1989, when they were approached by undercover police officer Walton, who told them he wanted a "twenty" worth of cocaine. Walton gave appellant twenty dollars in pre-recorded police funds, and in return Straite gave Walton a green ziplock bag containing cocaine. Walton left the scene and radioed descriptions of the defendants, who had separated, to an arrest team. Both defendants were detained and brought to a location where Walton identified them as the sellers. Although Straite had twenty-one dollars on his person when searched, the pre-recorded money was not recovered.

Approximately six months after he was sentenced,[1] appellant filed a motion to vacate sentence pursuant to D.C.Code § 23–110, alleging that his trial attorney ren-

---

1. Appellant had previously noted a direct appeal from his conviction which is also before us, consolidated with the appeal from the denial of his § 23–110 motion. In the direct appeal, ap-

pellant challenges the sufficiency of the evidence to support his conviction. We reject that contention. *E.g., Allen v. United States,* 580 A.2d 653 (D.C.1990).

dered ineffective assistance of counsel in two respects. First, appellant alleged by his own affidavit that, while appellant's case was pending, codefendant Straite had given appellant's attorney affidavits stating that Straite was responsible for the drug sale in question, that appellant was not involved in the sale, and that Straite was willing to testify in appellant's behalf. Appellant asserted that, even though Straite had pleaded guilty and been sentenced before appellant's trial, appellant's attorney had "never contacted him again, did not subpoena him for trial, and did not call him as a witness on my behalf."

Appellant also alleged that his attorney had failed to conduct an investigation in support of appellant's testimony at trial. Specifically, appellant had testified that just before he was detained by the arrest team in this case, another police officer had stopped him and asked if he was carrying a weapon or drug paraphernalia, then (after checking appellant's driver's license) was about to let him go when the arresting officer in this case came by and ordered appellant held for an identification by Officer Walton. Appellant alleged in his motion that his trial counsel had "failed to take sufficient steps to locate the officer

with whom I was speaking just prior to the arrest, who would have corroborated that I was not involved in the drug transaction." [2]

In its written response to appellant's motion, the government acknowledged that sometime before appellant's trial, he had given his attorney two affidavits dated March 13 and March 26, 1990, bearing "what purported to be Anthony Straite's signature," and that these affidavits, while "somewhat cryptic, ... might conceivably be construed as exonerating the defendant of any involvement in the charged cocaine distribution." The government attached these affidavits to its opposition. Also accompanying the opposition was a signed and sworn affidavit by appellant's trial counsel, in which he conceded that he had received from appellant the two affidavits "purporting to bear [Straite's] signature," but explained at length why he had attached little significance to them, had not found it appropriate to interview Straite, and had "declin[ed] to call [Straite] as a witness at Mr. Hollis' trial." Among these reasons was the fact that, before appellant gave counsel Straite's affidavits, counsel had learned from Straite's attorney that appellant "had threatened to kill Mr. Straite if he did not sign some affidavits." [3]

---

**2.** Although appellant's affidavit attached to his § 23–110 motion was originally unsigned and unsworn, the motion asserted that a signed and sworn version would shortly be submitted. The record is unclear at what point the latter version was provided to the trial court (the signed and notarized version is attached to appellant's brief), but, in any event, the trial judge did not rely on any formal inadequacies in appellant's affidavit in denying the § 23–110 motion.

**3.** Counsel's complete explanation in the affidavit was as follows:

When I received the first affidavit [from Strait] (Exhibit 1A), I concluded that it would be of little use, since it did not set forth in any detail the alleged offense or Mr. Straite's denial that Mr. Hollis was involved in that specific offense; the affidavit also referred to the wrong offense date. Mr. Hollis then procured the second affidavit (Exhibit 1B). While it was somewhat better than the first affidavit, I felt that this second document was also virtually useless because of its lack of detail.

4. I had several other reasons for not interviewing Mr. Straite and for declining to call him as a witness at Mr. Hollis' trial. The chief ones were as follows:

First, because Mr. Straite was represented by counsel, I felt that it would be inappropriate to approach him directly while his case was still pending. (I did, however, speak with his attorney.)

Second, prior to the time that Mr. Hollis gave me the attached affidavits, Mr. Straite's counsel told me that Mr. Hollis had threatened to kill Mr. Straite if he did not sign some affidavits. Thus, when I received the Straite affidavits in the spring of 1990, I had reason to believe that Mr. Straite had produced them under duress (if he produced them at all), and that my client's threats could be exposed if Mr. Straite were ever called to testify on my client's behalf. I believed that this would be devastating to my client's defense.

Third, in September 1990 (months after I had received the Straite affidavits), Mr. Straite's counsel told me that his client's version of the facts was vacillating but that Straite would definitely say that Mr. Hollis had brought him a customer on the night in question.

And fourth, I later learned that Mr. Straite had pled guilty on October 23, 1990 and that he had essentially agreed to the government's proffer of the facts at the time of his plea—

Counsel further explained in the affidavit that, although appellant had given him a general description before trial of the police officer who had stopped him "and run a computer check on him just prior to his arrest," a private investigator employed by counsel "was unable to locate any officer who fit the description given by Mr. Hollis and was in the pertinent area at the time of Mr. Hollis' arrest."

The trial judge denied the motion to vacate sentence without a hearing. In doing so the judge applied the twofold standard for measuring a claim of ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[4] First, the judge concluded on the basis of the "uncontradicted affidavit filed by [appellant's] trial counsel" that counsel's decision not to call Straite as a witness had been "a reasonable tactical judgment" evincing no constitutional deficiency under *Strickland's* first prong. In addition, appellant had "fail[ed] to establish the required prejudice" under *Strickland's* second prong, because the judge was "aware of no credible evidence proffered by [Straite] claiming that he will exonerate [appellant]." The judge did not dispute that Straite's affidavits on their face appeared to exonerate appellant of involvement in the sale.[5] Instead, the judge pointed to trial counsel's affidavit stating that Straite, in his guilty plea proceeding, had agreed with the government's proffer of facts implicating appellant; and the judge also agreed with counsel's assertion that testimony by Straite would have opened up "a potential Pandora's Box of questioning" by the prosecutor about the death threats mentioned in counsel's affidavit.

Finally, the judge found—again on the strength of trial counsel's affidavit—that counsel had made reasonable efforts to locate the police officer in question and that, in any case, appellant had "not attempt[ed] to state beyond mere speculation that this officer [if located] would exonerate him."

## II.

■ D.C.Code § 23–110(c) provides that "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief," the judge must grant a "prompt hearing thereon." We have said more than once that, where the court is faced with a claim of ineffective assistance of counsel, the quoted language creates a presumption that a hearing should be held, *Bruce v. United States*, 617 A.2d 986, 995 (D.C.1992); *Sykes v. United States*, 585 A.2d 1335, 1339 (D.C. 1991), especially where the allegations of ineffectiveness relate to facts outside the trial record. *Id.* At the same time, we recognize the superior vantage point of the trial judge from which "to determine

---

acknowledging that Mr. Hollis was involved in the charged distribution to the extent that he had brought the buyer to Straite. Thus, I felt that, even in the unlikely event that Mr. Straite would change his testimony and exculpate my client at trial, Straite's testimony would be subject to effective impeachment with his statements at the plea proceeding.

4. Under *Strickland,*
[t]he defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment, [and] [s]econd ... that the deficient performance prejudiced the defense." Unless a defendant can show both it cannot be said the conviction resulted from a "breakdown in the adversary process that renders the result unreliable."
*Curry v. United States,* 498 A.2d 534, 540 (D.C. 1985) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

5. Straite's first affidavit, dated March 13, 1990, stated that appellant "had no position or acknowledgment of the alleged [*sic*] that took place on November 11, 1989." In the second affidavit dated March 26, 1990 (apparently furnished at appellant's trial counsel's request for more detail), Straite personally admitted selling cocaine to the undercover officer but repeated that appellant had "had no position in my wrongdoing or acknowledgment of the alleged incident that took place on November 11, 1989." Straite added that he "freely admit[ted]" this fact and would do so "in court, if necessary"; he asked that appellant "be exempted to the fullest from all charges brought against him." Both affidavits were typed; only Straite's name and signature and the dates of the affidavits were handwritten. Both affidavits stated the wrong month of the charged offense (November instead of October) but gave the correct day (the eleventh).

whether there is any appreciable possibility that a hearing could establish either constitutionally defective representation or prejudice to the defendant in the *Strickland* sense." *Id.* at 1340.

■ In this case, the trial judge erred as a matter of law in concluding that there was no "appreciable possibility" that a hearing could establish a Sixth Amendment violation. In so holding, we do not refer to appellant's claim that trial counsel failed to make reasonable efforts to locate the police officer who, according to appellant, had stopped him for unrelated reasons shortly before his arrest. Even if counsel had done nothing to attempt to corroborate this testimony, appellant offered no reason in his motion—and provides none on appeal— why testimony by that officer (assuming he had been located) would have created "a reasonable probability that ... the result of the [trial] would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Appellant asserts in his brief (echoing his contention below) merely that the "officer would have been able to provide testimony which would have corroborated [appellant's] version of events and undercut the testimony of the government's primary witness, Officer Walton." A vague and conclusory allegation of prejudice such as this is insufficient to require a hearing under § 23–110. *Wright v. United States,* 608 A.2d 763, 766 (D.C.1992) (citing cases).

■ Quite another matter, however, is appellant's claim that counsel failed adequately to investigate codefendant Straite's willingness to exonerate appellant. Appellant's affidavit, which in turn was supported by Straite's affidavits expressing readiness to testify and exculpate appellant, created significant issues as to whether appellant's trial counsel had reasonably investigated potential exculpatory testimony. Counsel's responsive affidavit explained why he had not interviewed Straite and had concluded that a decision to call Straite to the stand would be both fruitless and potentially hazardous to appellant. However, we have previously made clear that competing affidavits of this kind are not a permissible basis for rejecting a claim

of ineffective assistance without a hearing. In *Johnson v. United States,* 385 A.2d 742 (D.C.1978), the defendant made several claims of ineffective assistance of counsel supported by affidavits; the government replied with affidavits of its own. We held that a hearing was necessary on the defendant's claims, and expressly refused to "consider the government's affidavits which, in many respects, contradicted appellant's assertions of ineffectiveness." *Id.* at 744. Similarly, in *Samuels v. United States,* 435 A.2d 392, 395 (D.C.1981) (per curiam), where the dispute was whether the defendant had instructed his trial counsel to file an appeal from his conviction, we held that the trial court "could not conclusively resolve the dispute without a hearing, for witness credibility—typically reflected best through live testimony under oath—is key here." *See also Rice v. United States,* 580 A.2d 119, 122–23 (D.C.1990).

The government argues that, unlike *Johnson,* this case involved no real "duel of affidavits" because Straite's affidavits "were unsworn, vague and conclusory, and made reference to the wrong date"; hence they were—in the government's words— insufficient to "controvert [the] specific explanations for counsel's failure to call Straite," even as a basis for obtaining a hearing. But, as pointed out earlier, the government acknowledged in its opposition to appellant's motion that Straite's assertions were concrete and specific enough to be viewed as exonerating appellant; and plainly they were. *See* note 5, *supra.* Moreover, trial counsel's affidavit tacitly conceded that Straite's confusion of months (November versus October) and the unsworn character of his affidavits would be inadequate to justify a failure even to interview him: counsel provided additional reasons for his decision not to pursue Straite's possible testimony. Appellant was entitled to question counsel about the adequacy of these reasons—whether, for example, he should have taken at face value the information that appellant had threatened Straite to provide the affidavits—before the trial judge could properly deny the motion.

It is true, as the government points out, that appellant provided no *current* affidavit by Straite indicating his continued willingness to testify in appellant's behalf. The trial judge appeared influenced by this fact because he noted that months after Straite had given appellant the affidavits, he pleaded guilty and purportedly accepted the government's proffer incriminating appellant—the implication being that Straite would not now risk a perjury charge by testifying contrary to his admissions under oath. Once again, however, this reasoning was not grounds for denial of a hearing. The judge professed to rely only on trial counsel's representation (in his affidavit) as to what had transpired at Straite's plea proceeding.[6] Even if we agree that this and other representations in counsel's affidavit cast doubt on whether Straite actually would exonerate his codefendant, appellant was entitled to question counsel about the basis for these representations.

We do not doubt that, as a condition of establishing prejudice under *Strickland*'s second prong, appellant may be required at the hearing to furnish more current proof—by affidavit or testimony—that Straite is prepared to testify and exculpate him. We hold only that, because the motion and the files and records do not conclusively show that appellant is unable to prove his claim of ineffective assistance, a hearing must be conducted.

*Reversed.*

---

**6.** No transcript had been prepared of that proceeding, and, indeed, the government informs us that "difficulties in transcribing" mean that one likely cannot be prepared at all. Additionally, we note that while the trial judge in this case apparently also took Straite's guilty plea, the judge did not purport to rely on his own recollection of admissions Straite had made at his plea proceeding—assuming that would have been appropriate.