**Norman E. MINOR, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 91–CF–1470, 93–CO–298 and 93–CO–825.

District of Columbia Court of Appeals.

Argued June 6, 1994.

Decided Sept. 15, 1994.

---

David Jonathan Sitomer, Washington, DC, for appellant.

Stacey L. Sovereign, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Elizabeth Trosman, Gary Wheeler and Barry Wiegand, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER,* Chief Judge, and FERREN ** and STEADMAN, Associate Judges.

FERREN, Associate Judge:

An indictment filed on February 7, 1990 charged appellant Norman E. Minor with distribution of heroin, distribution of cocaine, possession with intent to distribute heroin, and possession with intent to distribute cocaine. *See* D.C.Code § 33–541(a)(1) (1993). Before trial, the government discovered that the initial field tests performed on the controlled substances were erroneous and moved to dismiss the charges of distribution of cocaine and of possession with intent to distribute heroin from the indictment. The trial court granted the government's motion, and on June 13, 1991, a jury convicted appellant of distribution of heroin and possession with intent to distribute cocaine. Appellant raises two principal issues on appeal: (1) the trial court's reasonable doubt instruction violated his Fifth Amendment right to due process by misstating the government's burden of proof, and (2) the trial court abused its discretion by denying appellant's motion to call the

undercover officer as a witness at the suppression hearing on the showup identification. In addition, appellant contends that (3) the government's presentation of hearsay testimony and of the field test results to the grand jury violated his Fifth Amendment rights; (4) the trial court improperly denied his D.C.Code § 23–110 (1989) motion for new trial without a hearing and abused its discretion by refusing to approve the discovery and special service vouchers for investigative services necessary to develop his ineffective assistance of counsel claim;[1] and (5) the trial court abused its discretion by denying appellant's request for investigation of a comment made by courtroom personnel to the jury.[2] Finding no basis for reversal, we affirm the judgments of conviction.

## I.

At approximately 5:40 p.m. on January 21, 1990, Officer Zelford Platt, working undercover, approached appellant at 18th and H streets, N.E. and asked him for two packets of "slice."[3] Appellant asked Officer Platt for money, the officer gave it to him, and the two

* JUDGE WAGNER was an *Associate Judge* at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

** JUDGE FERREN was *Acting Chief Judge* at the time of argument. His status as an *Associate Judge* resumed on June 14, 1994.

1. Appellant also contends that the trial court's refusal to approve the special service vouchers violated his Sixth Amendment rights. Because he fails to articulate a basis for this claim, we decline to address it. *See* D.C.App.R. 28(a) (1985); *see also Railway Labor Executives' Ass'n v. United States R.R. Retirement Bd.*, 242 U.S.App.D.C. 178, 181 n. 6, 749 F.2d 856, 859 n. 6 (1984). Furthermore, the alleged violations of *counsel's* Fifth and Thirteenth Amendment rights are not a proper subject for this appeal.

2. In addition, appellant contends that the government unconstitutionally amended the indictment before trial by dismissing two counts: (1) distribution of cocaine and (2) possession with intent to distribute heroin. Because the indictment alleged the essential elements of the charged offenses, sufficiently informed appellant of the charges he must defend, and did not alter the charges against him, we conclude that he was not prejudiced by the dismissal of these counts and that his constitutional rights were thus not violated. *See Williams v. United States*, 641 A.2d 479 (D.C.1994).

Appellant also argues that the prosecutor improperly paired a question about his prior conviction for distribution of heroin with a question "which elicit[ed] a denial of the crime charged or a denial of a key element of the offense" under *Dorman v. United States*, 491 A.2d 455, 459 (D.C. 1984) (en banc). *See Harris v. United States*, 618 A.2d 140, 147 (D.C.1992). We disagree. Before he impeached appellant's credibility with the prior conviction, the prosecutor asked appellant about the purple container he had found on the ground that he then used to hold the drugs. This question regarding the container did not elicit a denial of a key element of the offense, and the prosecutor's conduct, therefore, was not improper. *See Dorman*, 491 A.2d at 459 n. 2 ("We emphasize that the proscription reaches impeachment following *denial* of the element, not impeachment that follows inquiry merely into the circumstances surrounding or relating to the element"). Clearly, the prosecutor's inquiry into how the appellant found the container and why he was not concerned that germs in the container would be injected into his system related "merely into the circumstances surrounding ... the element" rather than the element itself. *Id.*

3. "Slice" or "speedball" is a mixture of heroin and cocaine.

walked up 18th Street together. They proceeded to 812 18th Street where they met Marc Walker, who was standing on the other side of a chain-link fence. Appellant handed Walker the money, and Walker handed him two rolled-up ziplock bags. Officer Platt and appellant then continued to walk up 18th Street toward Benning Road. When they reached Benning Road, appellant handed Officer Platt the bags, turned around, and walked back to the apartment at 812 18th Street.

Officer Platt walked to his car, parked on 18th Street before Benning Road, where Platt performed field tests on the substance he had purchased from appellant. The tests indicated the presence of heroin and cocaine, so Officer Platt broadcast a look-out for appellant and Walker. He described appellant as "a black male wearing a blue and red jacket with green neon sweathood ... 5'7" in height, medium complexion." Officers John W. Diehl and Robin Turner responded to Platt's broadcast. Officer Platt watched as Diehl and Turner approached appellant, and Platt told them that he was one of the suspects. Officer Turner stopped appellant, and Officer Platt identified him to Officer Diehl over the radio. Officer Turner then arrested appellant and searched him. In appellant's left front pocket, Officer Turner found a purple container holding five clear plastic bags of white powder, which field-tested positive for both cocaine and heroin.

Drug Enforcement Administration (DEA) tests later performed on the substance seized from appellant showed the presence only of cocaine. The substance purchased by Officer Platt later tested to be only heroin, not a mixture of heroin and cocaine. When the government discovered that the initial field tests performed on the controlled substances were erroneous, it moved to dismiss distribution of cocaine and possession with intent to distribute heroin from the indictment.

## II.

■ During his final instructions to the jury regarding the government's burden to prove guilt beyond a reasonable doubt, the trial judge inadvertently inserted the word "reasonable" where it did not belong in the standard Red Book instruction:

> The government is not required to establish guilt beyond all *reasonable* doubt, or to a mathematical certainty. Its bu[r]den is to establish guilt beyond a reasonable doubt.

(Emphasis added.) See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 2.09 (3d ed. 1978) (the "Red Book"). Appellant argues that under *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the instruction unconstitutionally misstated the government's burden of proof, requiring *per se* reversal. To the contrary, we believe that, taking the jury instructions as a whole, it is not reasonably likely that the jury applied the instruction in an unconstitutional manner; thus, reversal is not required. See *Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994).

Even before the government called its first witness, the trial judge stressed that the government had the burden of proving appellant's guilt beyond a reasonable doubt:

> Ladies and gentlemen, every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial, unless and until he is proven guilty beyond a reasonable doubt. The burden is on the Government to prove the defendant guilty beyond a reasonable doubt. And that burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence, or to produce any evidence.

The judge repeated this paragraph as part of the final jury instructions and added:

> Ladies and gentlemen, if you find that the Government has proven beyond a reasonable doubt every element of the offense to which this defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the Government has failed to prove beyond a reasonable doubt any element of the offenses of which this

defendant is charged, you must find the defendant not guilty.[4]

The trial judge therefore had correctly articulated the reasonable doubt standard repeatedly before he made the erroneous statement at issue here: that "[t]he government is not required to establish guilt beyond all *reasonable* doubt, or to a mathematical certainty." (Emphasis added.) Indeed, the judge's very next sentence once again articulated the correct standard: "Its bu[r]den is to establish guilt beyond a reasonable doubt." The correct standard was reiterated still another time when the trial judge discussed the elements of the offenses, as well as when the judge instructed the jury regarding witness testimony: "Now, in deciding whether the Government has established the charge against the defendant beyond a reasonable doubt you must consider and weigh the testimony of all the witnesses who have appeared and testified in this trial."

In order to rule that appellant's Fifth Amendment due process right was violated, we would have to conclude that there was a reasonable likelihood the jury applied the instructions in an unconstitutional manner. *See Victor,* —— U.S. at ——, 114 S.Ct. at 1243. We cannot do so. Not only was the error so subtle that appellant's counsel failed to object to it when it occurred, but counsel also failed to note any objection when the trial judge specifically asked whether she was satisfied with the instructions. Furthermore, the trial judge clearly told the jury to "consider all the instructions . . . as a whole, and . . . not disregard any one instruction, or give special attention to any one instruction." Accordingly, we are satisfied that the instructions taken as a whole did not unconstitutionally misstate the government's burden of proof. *See Dickerson v. United States,* 620 A.2d 270, 273 (D.C.1993) ("when read in complete context," the trial court's instruction, substituting "it's your duty to acquit" for the Red Book language "must acquit,"

did not reduce the government's burden of proof); *United States v. Taylor,* 302 U.S.App.D.C. 349, 356, 997 F.2d 1551, 1558 (1993) ("the court's instruction on reasonable doubt did not lessen the prosecution's burden of proof and was not in error because there is no reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution").

There is no reasonable likelihood that the jury applied the instructions in a manner that permitted the jury to find appellant guilty by less than proof beyond a reasonable doubt—especially because the trial court repeatedly instructed the jury that the government had the burden to demonstrate guilt beyond a reasonable doubt. *See Victor,* —— U.S. at ——, 114 S.Ct. at 1243. In sum, although the lone misstatement was unfortunate, appellant's Fifth Amendment rights were not violated; reversal is not required. *See also United States v. Coppola,* 486 F.2d 882, 884–85 (10th Cir.1973) (trial court's inadvertent misstatement that government must establish defendant's guilt by a preponderance of the evidence not reversible error because other reasonable doubt instructions throughout the trial sufficiently clarified ambiguities created by the one erroneous instruction), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *United States v. Newkirk,* 481 F.2d 881, 883–84 (4th Cir.1973) (trial court's misstatement that jury must find defendant not guilty beyond a reasonable doubt not reversible error where "court repeatedly advised the jury that the government had the burden of proving every essential element of the crime charged beyond a reasonable doubt"), *cert. denied,* 414 U.S. 1145, 94 S.Ct. 897, 39 L.Ed.2d 100 (1974); *United States v. Baratta,* 397 F.2d 215, 227 (2d Cir.) (criminal instruction that erroneously used preponderance of evidence standard was not plain error or defect that affected defendant's substantial rights where correct standard given elsewhere in instruc-

---

4. The trial court then added the standard definition of "reasonable doubt" from the Red Book:

What is it that is reasonable doubt? Reasonable doubt, as the name implies, is a doubt that is based on reason, a doubt for which you can give a reason. It is such a doubt as would cause one of you ladies and gentlemen, after

careful and candid and impartial consideration, to be so undecided that you cannot say you have an abiding conviction of the defendant's guilt. It's such a doubt as would cause a reasonable person to pause or hesitate in the graver or more important transactions of life. *See* Red Book Instr. No. 209 (3d ed. 1978).

tion), *cert. denied,* 393 U.S, 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968).

## III.

Before trial, appellant moved to suppress Officer Platt's showup identification of appellant on the ground it was suggestive and unreliable. At the suppression hearing, the government called one of the arresting officers, Officer Diehl, as its only witness. Defense counsel was surprised that the government chose not to call the undercover purchaser, Officer Platt, as a witness and requested the trial court's permission to examine him, asserting that Officer Diehl's testimony was not sufficient to establish the reliability of the identification. The trial court denied appellant's request, concluding that the identification was not suggestive and, in any event, was reliable. Appellant now argues that the trial court abused its discretion by denying his motion to call Officer Platt as a witness.

█ Assuming for the sake of argument that the trial court should have permitted appellant to call Officer Platt, *see In re F.G.,* 576 A.2d 724, 727 (D.C.1990) (en banc), we are convinced that on this record any error was not of a magnitude requiring reversal and thus did not constitute an abuse of discretion. *See Harris v. United States,* 618 A.2d 140, 143 (D.C.1992) ("Our scope of review of the trial court's ruling excluding evidence is whether the trial court abused its discretion"). Officer Diehl testified that little time had elapsed between the sale and appellant's arrest, that Officer Platt had walked beside appellant and had had an ample opportunity to view him, and that Officer Platt had observed Officers Diehl and Turner as they approached appellant. Significantly, moreover, Officer Platt testified at trial, and that testimony was fully consistent with Officer Diehl's testimony at the suppression hearing. Even if the trial court should have permitted appellant to call Officer Platt as a witness at the suppression hearing, his testimony under the circumstances would not have affected the outcome of the motion. *See Best v. United States,* 582 A.2d 966, 969 (D.C.1990) ("we are now able to conclude after the trial that a hearing upon the motion ... would have been fruitless").

## IV.

█ Next, appellant contends that the government's presentation of hearsay testimony and the field test results to the grand jury violated his Fifth Amendment rights. Specifically, he argues that, because Officer Platt did not have personal knowledge that a substance was seized from appellant after his arrest and that this substance field-tested positive for cocaine and heroin, Officer Platt should not have been permitted to testify about these matters before the grand jury. In addition, appellant argues that the field test results, without the corroboration of further DEA lab tests, were "inconclusive indicators of drug presence" and should not have not have been presented to the grand jury. We cannot agree.

Both Officer Platt's hearsay testimony and the field test results were well within the wide range of evidence that a prosecutor, in his or her broad discretion, may introduce to a grand jury. *See United States v. Calandra,* 414 U.S. 338, 343–45, 94 S.Ct. 613, 617–19, 38 L.Ed.2d 561 (1974) (grand jury "generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"; its "sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered"); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) (indictment may rest entirely on hearsay); *In re Sealed Case,* 237 U.S.App.D.C. 312, 318, 737 F.2d 94, 100 (1984) (prosecutor has broad discretion to introduce evidence from wide variety of sources). Furthermore, "[t]he grand jury was not misled into believing that it had received eyewitness rather than hearsay testimony; nor was this a case in which the grand jury would not have indicted a defendant if it had heard eyewitness rather than hearsay testimony." *Miles v. United States,* 483 A.2d 649, 654 (D.C.1984).

## V.

On June 18, 1991, appellant filed a *pro se* motion for new trial, contending that his trial

counsel had been ineffective in failing to obtain a second test from an independent chemist and in failing to call a chemist as a defense witness to testify that pre-mixed cocaine and heroin never is sold on the street. He also argued that Officers Platt and Turner had committed perjury when they testified that the substance had initially tested positive for both cocaine and heroin. The court denied appellant's motion at a hearing on October 18, 1991, explaining that defense counsel's decision not to call an independent chemist to testify was a reasonable tactical decision and that appellant could not demonstrate either deficient performance or prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

On August 3, 1992, appellant filed a "motion for a new trial pursuant to D.C.Code § 23–110." In the motion, appellant renewed his claims of ineffective assistance of counsel and requested appointment of counsel and issuance of special service vouchers to pay for investigators to pursue his claim. On February 11, 1993, the trial court denied appellant's motion, explaining:

> This Court ... is not required to entertain second or successive motions for similar relief from the same prisoner ... The Court has previously rejected defendant's core claim that trial counsel provided him constitutionally ineffective representation because she did not understand that "slice" ... is never sold on the streets of the District of Columbia, already mixed, and that trial counsel failed to conclusively establish that Officers Platt and Turner knowingly presented perjured testimony to the Grand Jury and at trial when they testified that their initial field test on the drugs purchased from defendant was positive for both cocaine and heroin.

Appellant now argues that the trial court improperly denied his D.C.Code § 23–110 motion without a hearing and abused its discretion by refusing to approve the discovery and special service vouchers necessary to develop his ineffective assistance of counsel claim.

■ Although the right to a hearing is presumed under D.C.Code § 23–110, *see*

*Hollis v. United States,* 623 A.2d 1229, 1232 (D.C.1993), a hearing is not always required. *See Ready v. United States,* 620 A.2d 233, 234 (D.C.1993). Specifically, when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief," a hearing is not necessary. D.C.Code § 23–110(c); *see Ready,* 620 A.2d at 234 (no hearing required where even if allegations were true, no relief would be warranted). In addition, the court is not required "to entertain a second or successive motion for similar relief on behalf of the same prisoner." D.C.Code § 23–110(e); *see Vaughn v. United States,* 600 A.2d 96, 97 (D.C.1991).

■ We conclude that the trial court did not abuse its discretion when it decided to deny appellant's motion without a hearing. *See Sykes v. United States,* 585 A.2d 1335, 1339 (D.C.1991). Not only had the court already entertained a motion for similar relief at the October 1991 hearing, but also appellant clearly was not entitled to relief under *Strickland* even if his allegations were true. As the trial court explained at the October 1991 hearing, defense counsel's performance at trial was not deficient and did not prejudice appellant. Counsel understood appellant's position that pre-mixed heroin and cocaine was not sold on the street and that the field test results had to be erroneous. Rather than calling an independent chemist to testify, however, counsel used this information to cross-examine the government's witnesses. We cannot say the trial court erred in concluding that this was a reasonable tactical decision that did not prejudice appellant, especially because appellant already had admitted possessing cocaine. *See Ali v. United States,* 581 A.2d 368, 381 (D.C.1990) (testimony allegedly omitted by trial counsel would not have been exculpatory and therefore, its absence did not prejudice defendant), *cert. denied,* —— U.S. ——, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991). Given the inadequacy of appellant's allegations, the trial court also did not abuse its discretion by failing to approve the requested special service vouchers to pay investigators to pursue his claim. *See Gaither v. United States,* 391 A.2d 1364, 1368 (D.C.1978) (no need to ap-

prove special services if there is no reason to think claim could be successful).

## VI.

▆▆▆ In addition to appellant's ineffective assistance of counsel claim, his August 3, 1992 motion under § 23–110 asserted that "newly discovered evidence" mandated a new trial. He claimed that "when the jury was first leaving the courtroom to deliberate its verdict, he heard courtroom personnel informally caution ... the jury that they should decide quickly as the court wanted them to finish before the judicial conference pending the next day." Appellant admitted that the trial court did not hear the comment and that it was not reflected in either the court reporter's notes or the tapes of the proceeding. He asked the court to authorize special service vouchers to pay for enhancement of the tapes, as well as to either approve special service vouchers to pay for a defense investigator, or to hire the court's own investigator, to question the jurors and courtroom personnel about the incident. Appellant also sought an order requiring the court reporter to allow defense counsel to review the court reporter's tape recordings of the trial.

On December 10, 1992, the trial court denied appellant's request for special services. The court explained:

> In his motion papers, defendant makes a bald, unsworn assertion that he alone overheard unidentified courtroom personnel tell the jury that the Court wanted them to return a verdict before lunch. Counsel for defendant in the 23–110 motion candidly acknowledges that trial counsel did not hear this comment. Since defendant was incarcerated, there would not have been an opportunity for the defendant to overhear a conversation between court personnel and the jury unless that communication occurred in open court with all the parties present, including the Court. The Court did not hear any such comment and the court reporter's notes and tapes do not reflect that any such comment was made....

> Because defendant's unsworn claim of jury tampering is devoid of any support in the record, it would not be appropriate to compel the court reporter to allow counsel to review his tapes or to issue special service vouchers to enhance the tape under the Criminal Justice Act on the state of the present record.

The trial court formally denied appellant's motion for new trial on February 17, 1993.

Appellant contends on appeal that the trial court abused its discretion by refusing to order the court reporter to allow defense counsel to review the court reporter's tapes and, further, by refusing to authorize the services necessary for proper investigation of his claim. For the reasons articulated by the trial court, we disagree. Although appellant eventually provided the court with his sworn affidavit, he never explained why he required more than a year after the trial to raise his claim. In addition, he never explained how he possibly could have heard the statement when those around him did not. The trial court "need not authorize an expenditure for a mere fishing expedition." *Berry v. United States,* 528 A.2d 1209, 1210 (D.C.1987) (quotations omitted). Appellant's claim falls short of the showing necessary to justify these special investigative services, and the trial court did not abuse its discretion in refusing to authorize them. *See id.* (appellant failed to show that court-appointed chemist was necessary to adequate defense); *Gaither,* 391 A.2d at 1367 (appointment of private psychiatrist necessary for defendant's insanity defense). Finally, although we are troubled by the trial court's refusal to allow defense counsel to review the court reporter's tapes, we cannot conclude that this amounted to an abuse of discretion requiring reversal of appellant's convictions.

*Affirmed.*

### Supplementary Statement by Associate Judge FERREN:

The trial court's denial of appellant's request to call Officer Platt as a witness deeply concerns me because, absent any showing of appellant's bad faith, he was entitled to an "evidentiary hearing ... at which government witnesses [were] made available," *In re F.G.,* 576 A.2d 724, 727 (D.C.1990) (en

banc)—meaning all government witnesses to the identification.

In *In re F.G.*, we exercised our supervisory power to ensure that "every [criminal] defendant is entitled to an evidentiary hearing on a motion to suppress a showup identification unless it clearly appears from informal discovery that the defendant is seeking a hearing in bad faith." *Id.* at 725. Our conclusion that such hearings should routinely be granted was based largely on our concern that the government would not otherwise make its witnesses available to the defendant for purposes of evaluating and, when appropriate, challenging the showup identification. *See id.* at 727–28.

It is entirely possible that a government witness, withheld from the evidentiary hearing to which a defendant is entitled under *In re F.G.* would provide testimony contradicting other government identification witnesses to the point of undermining the proffered identification altogether. Accordingly, I believe the trial court erred in refusing to permit defense counsel to call Officer Platt, a key identification witness.

As indicated in my opinion for the court, however, I conclude that, in this case, the error was harmless. I can imagine situations, however, where the trial court's decision to eliminate defense access to government identification witnesses at an *F.G.* hearing would lead to reversible error.